557 So.2d 574 (1990)
EASTERN AIRLINES, INC., Petitioner,
v.
Charles KING, Respondent.
No. 73395.
Supreme Court of Florida.
February 15, 1990.
Rehearing Denied March 28, 1990.
Terry L. Redford, Linda Ann Singer and John M. Murray of Thornton, David & Murray, P.A., Miami, for petitioner.
Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for respondent.
Edward T. O'Donnell of Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, amicus curiae for Product Liability Advisory Council.
GRIMES, Justice.
We review King v. Eastern Airlines, Inc., 536 So.2d 1023 (Fla. 3d DCA 1987), in which the Third District Court of Appeal partially reversed a judgment on the pleadings. Our jurisdiction is based on conflict with Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277 (Fla. 1985), and Brown v. Cadillac Motor Car Division, *575 468 So.2d 903 (Fla. 1985). Art. V, § 3(b)(3), Fla. Const.
The facts as alleged in the complaint were as follows. On May 5, 1983, the respondent, Charles King, was a passenger on Eastern Airlines' Flight # 855 departing from Miami International Airport, bound for Nassau, Bahamas. En route one of the plane's three engines failed, so the flight crew turned the plane around to return to Miami. After turning around, the plane's other two engines failed. The crew and passengers were prepared to ditch the plane as it lost altitude. Finally, after an extended period, the crew was able to restart one engine and land the plane at Miami International Airport.
King sued Eastern Airlines for, inter alia, damages allegedly incurred as a result of Eastern's reckless or intentional infliction of mental distress and for damages arising under the Warsaw Convention.[1] Specifically, count III of King's amended complaint alleged that Eastern failed to properly inspect, maintain, and operate its aircraft and that "Eastern's records reveal at least one dozen prior instances of engine failures due to missing O-rings [oil seals], and yet Eastern failed to institute appropriate procedures to cure this maintenance problem despite such knowledge." King further alleged that this constitutes an "entire want of care" and "indifference" and implies "such wantonness, willfulness, and malice as would justify punitive damages." In count IV, King claimed damages under the Warsaw Convention by reason of this negligent or willful misconduct.
The circuit court stayed action in this lawsuit pending the outcome of related federal actions filed by other passengers in the United States District Court for the Southern District of Florida. The district court entered judgments on the pleadings in Eastern's favor based on the failure to state a cause of action. In re Eastern Airlines, Inc. Engine Failure, Miami Int'l Airport on May 5, 1983, 629 F. Supp. 307 (S.D.Fla. 1986). Persuaded by the federal district court's reasoning, the state circuit court then entered a judgment on the pleadings in favor of Eastern and against King. On appeal a panel of the Third District Court of Appeal reversed and reinstated the claim for intentional infliction of mental distress but affirmed the dismissal of the claim for emotional distress under the Warsaw Convention. King v. Eastern Airlines, Inc., 536 So.2d 1023 (Fla. 3d DCA 1987). On motion for rehearing, the court again affirmed the dismissal of the Warsaw Convention claim but held that the unavailability of a cause of action under the Warsaw Convention did not preclude other forms of relief. Id. at 1030, 1032. Thereafter, in a split vote on rehearing en banc, the court adhered to the decision but announced different reasons for reversing the dismissal of the state claim for emotional distress. Id. at 1032.
The related cases in federal court were appealed to the Eleventh Circuit Court of Appeals. That court relied on the Third District's decision in King to uphold the state claim for mental distress but noted that the issue was pending in this Court. Floyd v. Eastern Airlines, Inc., 872 F.2d 1462, 1467 (11th Cir.1989). The Eleventh Circuit Court of Appeals then concluded that the Warsaw Convention does allow recovery for purely mental injuries unaccompanied by physical trauma. Id. at 1480. Further, the court ruled that to the extent that the cause of action for intentional infliction of emotional distress under Florida law conflicts with the cause of action under the Warsaw Convention, Florida law was preempted. Id. at 1482.
This Court first recognized the tort of intentional infliction of emotional distress in Metropolitan Life Insurance Co. v. McCarson. In McCarson we approved the adoption of section 46, Restatement (Second) of Torts (1965), which states:
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is *576 subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
In that case, however, we held that the court below had not conformed its findings to the comments to section 46 which explain the application of the tort.
Comments d and i to section 46 are particularly pertinent to our consideration:
It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
... .
i. Intention and recklessness. The rule stated in this Section applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts reckless, as that term is defined in § 500, in deliberate disregard of a high degree of probability that the emotional distress will follow.
Section 500, Restatement (Second) of Torts (1965), provides:
The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.
Comment b of section 500 further elaborates that "[c]onduct cannot be in reckless disregard of the safety of others unless the act or omission is itself intended... ."
Applying these principles to the present case, it is clear that King has failed to state a claim for reckless or intentional infliction of emotional distress. The allegations that Eastern failed to properly inspect, maintain, and operate its aircraft rise no higher than negligence. The fact that there may have been at least one dozen prior instances of missing O-rings causing engine failures does not reflect "extreme and outrageous conduct intentionally or recklessly" causing emotional distress. The balance of count III contains only conclusions. See Price v. Morgan, 436 So.2d 1116 (Fla. 5th DCA 1983) (a pleading is insufficient if it contains merely conclusions as opposed to ultimate facts supporting each element of the cause of action).
As amicus points out, it is incongruous that Eastern would recklessly or intentionally place its passengers, crews, and multimillion dollar airplanes in such peril. Our conclusion is reinforced by King's allegation that, despite Eastern's knowledge of the prior engine failures, Eastern failed to take "appropriate" procedures to correct the problem. Failing to take "appropriate" action to correct the problems would appear to negate an intentional act or an intentional failure to act on Eastern's part. Significantly, King's complaint does not allege that Eastern knew or should have known that the procedures were inappropriate.
The majority opinion below represents a misapplication of the principle established in Metropolitan Life Insurance Co. v. McCarson. Furthermore, as noted by dissenting Judge Schwartz:
In essence, the majority view amounts to establishing an exception to the recently reaffirmed "impact rule," Brown v. Cadillac Motor Car Div., 468 So.2d 903 (Fla. 1985), which would arise in every case in which the defendant acts recklessly. It would apply when, for example, *577 a highly intoxicated driver recklessly operates his vehicle and narrowly misses but severely frightens a plaintiff, or when a plaintiff uses and becomes mentally concerned over some potential harm, but is not actually "impacted" or physically injured by a product  like a Mustang or a Dalkon Shield  which may have been recklessly manufactured. Whatever the law of Florida may previously have been, see Crane v. Loftin, 70 So.2d 574 (Fla. 1954) (dictum); Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950) (dictum), it is very clear that there is no such exception under the present law of our state.
536 So.2d at 1036-37 (Schwartz, J., dissenting).
While not the basis of our jurisdiction, we deem it appropriate to address the question of whether King has stated a cause of action under the Warsaw Convention. The Warsaw Convention is an international treaty to which the United States is a party. Air France v. Saks, 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). The Convention applies "to all international transportation of persons, baggage, or goods performed by aircraft for hire." Warsaw Convention art. 1. The Convention creates a presumption that the carrier is liable for damage sustained by passengers as a result of the carrier's conduct, shifting the burden of proof to the carrier to show that it took all necessary measures, or that it was impossible to take such measures, to avoid the damage. Warsaw Convention arts. 17, 20. The Convention originally placed a limit of $8,300 on the carrier's liability. Warsaw Convention art. 22. Under the Montreal Agreement of 1966,[2] which is not a treaty of the United States, the airlines agreed to raise the limit of liability to $75,000 and waive the due care defenses of article 20 for flights originating, terminating, or having a stopping point in the United States. Floyd, 872 F.2d at 1468.
Article 17 of the Convention establishes the liability of international air carriers for injuries to passengers. The unofficial United States translation of article 17 states:
The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.
49 Stat. 3014, reprinted at note following 49 U.S.C. § 1502. However, the French text of the Warsaw Convention is the only official text and the one officially adopted and ratified by the Senate. See Floyd, 872 F.2d at 1470. The United States Supreme Court has held that the French legal meaning controls "not because `we are forever chained to French law' by the Convention, but because it is our responsibility to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties." Saks, 470 U.S. at 399, 105 S.Ct. at 1342 (citation omitted). The French text of article 17 reads:
Le transporteur est responsable du domage survenu en cas de mort, de blessure ou de toute autre lesion corporelle subie par un voyageur lorsque l'accident qui a cause le dommage s'est produit a bord de l'aeronef au cours de toutes operations d'embarquement et de debarquement.
Both parties conceded at oral argument that this case involved an "accident" occurring on board the aircraft. See Saks, 470 U.S. at 405, 105 S.Ct. at 1345 (accident defined as an "unexpected or unusual happening or event that is external to the passenger"). Therefore, the question we must address is whether the use of the language of article 17 was meant to encompass purely emotional distress.
The courts have sharply split on this issue. Those which permit recovery include *578 Floyd, 872 F.2d 1462; Karfunkel v. Compagnie Nationale Air France, 427 F. Supp. 971 (S.D.N.Y. 1977); Krystal v. British Overseas Airways Corp., 403 F. Supp. 1322 (C.D.Cal. 1975); Husserl v. Swiss Air Transport Co., 388 F. Supp. 1238 (S.D.N.Y. 1975); Palagonia v. Trans World Airlines, Inc., 110 Misc.2d 478, 442 N.Y.S.2d 670, 672 (Sup.Ct. 1978). Other courts have determined that article 17 does not contemplate damages for emotional distress unaccompanied by physical trauma. Burnett v. Trans World Airlines, Inc., 368 F. Supp. 1152 (D.N.M. 1973); Rosman v. Trans World Airlines, Inc., 34 N.Y.2d 385, 358 N.Y.S.2d 97, 314 N.E.2d 848 (1974).
After careful review and consideration, we are persuaded by the extensive and thorough resolution of this matter in Floyd. The Floyd court exhaustively examined the French legal meaning of the text, the concurrent and subsequent legislative history of the Warsaw Convention, the conduct of the parties, and the cases interpreting article 17.[3] The court determined that French civil law permits recovery for any damage, whether material or moral, including mental suffering unaccompanied by physical injury. Id. at 1472. We agree that the analysis of the cases which preclude recovery for emotional distress is flawed because those courts did not carefully consider the French legal meaning of lesion corporelle or the negotiating history of the Convention. Id. at 1476-78. In denying recovery, those courts have erroneously imposed upon article 17 the common law requirement that emotional injury must accompany physical injury in order to be compensable.
Because we found that King failed to state a claim under state law it is unnecessary for us to discuss whether a state law claim for emotional distress would be preempted by the Warsaw Convention. However, we will address his claim for damages in excess of $75,000 under the Warsaw Convention. Article 25 of the Convention states:
(1) The carrier shall not be liable to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be the equivalent to wilful misconduct.[[4]]
The Eleventh Circuit determined that article 25 did not provide a separate cause of action for punitive damages but instead served only to lift the strict limit on liability for compensatory damages in the case of wilful acts. Floyd, 872 F.2d at 1485.
We have already determined that King's allegations are not sufficient to support a claim for reckless or intentional conduct. It follows that we must further hold that he has no basis to assert a claim alleging "wilful misconduct." We reach this conclusion whether we apply the federal interpretation of "wilful misconduct," Butler v. Aeromexico, 774 F.2d 429 (11th Cir.1985), or the Florida standard for the recovery of punitive damages. White Construction Co. v. DuPont, 455 So.2d 1026 (Fla. 1984).
In conclusion, we disapprove the decision below with respect to both the state claim for emotional distress and that under the Warsaw Convention. We hold that King has failed to state a claim for emotional distress under Florida law. However, he does have a claim for emotional distress under article 17 of the Warsaw Convention but any recovery is limited to a maximum of $75,000. Article 25 of the Convention does not apply because the complaint fails to state a claim for "wilful misconduct." We remand the case for further proceedings in accordance with this opinion.
It is so ordered.
OVERTON, SHAW and KOGAN, JJ., concur.
*579 EHRLICH, C.J., concurs specially with an opinion, in which SHAW and BARKETT, JJ., concur.
BARKETT, J., concurs specially with an opinion.
McDONALD, J., concurs in part and dissents in part with an opinion.
EHRLICH, Chief Justice, specially concurring.
I concur in all aspects of the majority opinion except the majority's approval of the following language quoted from Judge Schwartz's dissent in the decision below
"In essence, the majority view amounts to establishing an exception to the recently reaffirmed `impact rule,' Brown v. Cadillac Motor Car Div., 468 So.2d 903 (Fla. 1985), which would arise in every case in which the defendant acts recklessly. It would apply when, for example, a highly intoxicated driver recklessly operates his vehicle and narrowly misses but severely frightens a plaintiff, or when a plaintiff uses and becomes mentally concerned over some potential harm, but is not actually `impacted' or physically injured by a product  like a Mustang or a Dalkon Shield  which may have been recklessly manufactured. Whatever the law of Florida may previously have been, see Crane v. Loftin, 70 So.2d 574 (Fla. 1954) (dictum); Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950) (dictum), it is very clear that there is no such exception under the present law of our state."
At 576-77 (quoting 536 So.2d 1023, 1036-37 (Fla. 3d DCA 1987) (Schwartz, J., dissenting)). I write separately to point out the confusion or misunderstanding which I fear may be created by the quoted language. This quote should not be taken to mean that impact or a physical manifestation of psychological trauma is required in connection with the tort of intentional infliction of emotional distress.
This Court has long recognized the tort of negligent infliction of emotional distress where the distress is accompanied by physical impact. See, e.g., Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974); Clark v. Choctawhatchee Electric Co-Operative, 107 So.2d 609 (Fla. 1958). More recently, in Champion v. Gray, 478 So.2d 17 (Fla. 1985), and Brown v. Cadillac Motor Car Division, 468 So.2d 903 (Fla. 1985), we modified, in some limited situations, the requirement of an impact in connection with a claim of negligent infliction of emotional distress. However, in those situations where impact is unnecessary, a clearly discernible physical impairment must accompany or occur within a short time after the negligently inflicted psychic injury. 468 So.2d at 904; 478 So.2d at 17.
As noted by the majority, this Court first recognized the tort of intentional infliction of emotional distress by adopting section 46, of the Restatement (Second) of Torts (1965), in Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277 (Fla. 1985). While there must be impact or an objectively discernible physical manifestation before a cause of action arising from simple negligence may exist, no requirement of impact or physical injury is contained in section 46. In fact, comment k of that section states that the rule
is not ... limited to cases where there has been bodily harm; and if the conduct is sufficiently extreme and outrageous there may be liability for the emotional distress alone, without such harm. In such cases the courts may perhaps tend to look for more in the way of outrage as a guarantee that the claim is genuine; but if the enormity of the outrage carries conviction that there has in fact been severe emotional distress, bodily harm is not required.
Where the psychic injury is based on simple negligence, proof of impact or objective physical manifestation affords a guarantee that the mental distress is genuine. Whereas, the clearly outrageous nature of the conduct necessary under section 46 serves as adequate assurance that the resulting mental disturbance is not fictitious. See W. Keeton, Prosser and Keeton on Torts, §§ 12 & 54 (5th ed. 1984). This distinction between causes of action based on negligent and intentional infliction of emotional distress was recognized by this *580 Court in Brown. We noted that our holding in that case that there is no cause of action within this state for psychological trauma alone resulting from simple negligence was not intended to disturb prior decisions of the district courts allowing such damages in intentional tort actions based on outrageous conduct. 468 So.2d at 904 n. *.[*]
SHAW and BARKETT, JJ., concur.
BARKETT, Justice, specially concurring.
I concur in the Court's judgment that prior decisions would bar relief for the intentional infliction of mental distress in this case. I believe, however, that persons who have suffered great mental anguish through the extreme negligence of a tortfeasor, such as Eastern's in this case, should be permitted a remedy.
McDONALD, Justice, concurring in part and dissenting in part.
I would hold that King has no cause of action against Eastern under Florida law or under the Warsaw Convention unless his mental anguish evolves into an objectively discernible bodily injury similar to that described in Champion v. Gray, 478 So.2d 17 (Fla. 1985), and Brown v. Cadillac Motor Car Division, 468 So.2d 903 (Fla. 1985).
In reaching this conclusion I am much more persuaded by Burnett v. Trans World Airlines, Inc., 368 F. Supp. 1152 (D.N.M. 1973), than I am by Floyd v. Eastern Airlines, Inc., 872 F.2d 1462 (11th Cir.1989), even though the latter discusses the former. Burnett aptly points to the difference between lesion corporelle and lesion mentale. As the court further reported in Burnett, the First International Conference on Private Air Law had been interpreted to allow mental distress in a myriad of circumstances. It then noted:
[T]he Conference appointed a group of air law experts who would report to the Second International Conference in Warsaw in 1929. The text they submitted became the mode for present Article 17 and it provided in pertinent part:
"Le transporteur est responsable du dommage survenu pendant le transport:
(a) en cas de mort, de blessure ou de toute autre lesion corporelle subie parun voyageur."
By thus restricting recovery to bodily injuries, the inference is strong that the Convention intended to narrow the otherwise broad scope of liability under the former draft and preclude recovery for mental anguish alone. Had the delegates desired otherwise, there would have been no reason to so substantially modify the proposed draft of the First Conference.
Concurring in this conclusion, Professor Juglart of the Law Faculty of the University of Paris has proffered the opinion that Article 17, as now constituted, does not permit recovery for mental injuries. He concludes that to so recover, the Article would have to undergo amendment to read "lesion corporelle ou mentale."
368 F. Supp. at 1157 (footnotes omitted).
It thus appears to me that some form of bodily injury must be the result of an airlines' wrong before there can be a recovery. I can not, and do not, equate mental stress to a bodily injury and do not believe it contemplated by the Warsaw Convention.
I concur with the majority opinion in reference to the discussion of Florida law, but dissent on the effect of the Warsaw Convention treaty.
NOTES
[1] Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, October 12, 1929, adhered to by the United States June 27, 1934, 49 Stat. 3000, 3014, reprinted in 49 U.S.C. note following § 1502.
[2] Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, Agreement CAB 18900, approved by CAB Order No. 28680, May 13, 1966, 31 Fed.Reg. 7302 (1966).
[3] The French words "lesion corporelle" are literally translated as "bodily injury."
[4] We use the English translation of this article since neither party has suggested an alternative French legal meaning. See Floyd v. Eastern Airlines, Inc., 872 F.2d 1462, 1462 n. 34 (11th Cir.1989).
[*] For this reason, I do not believe that this Court's decision in Brown v. Cadillac Motor Car Division, 468 So.2d 903 (Fla. 1985), is in conflict with the decision under review.