561 So.2d 406 (1990)
Valerie LASHLEY, Appellant,
v.
Louis BOWMAN, Etc., Appellee.
No. 89-1099.
District Court of Appeal of Florida, Fifth District.
May 10, 1990.
*407 Daniel P. Faherty of Cianfrogna, Telfer & Reda, P.A., Titusville, for appellant.
W. Riley Allen, Orlando, for appellee.
GRIFFIN, Judge.
This is the appeal of a summary final judgment in favor of the defendant/appellee in a tort case involving claims of malicious prosecution, intentional infliction of emotional distress and slander.
The incident leading to appellant's suit occurred February 27, 1987 in Titusville at the Catfish Inn, a restaurant owned and operated by appellee. Appellant and her sister, Susan Bennett, arrived at the restaurant around 10:00 P.M. Appellant ordered lobster and iced tea.
According to appellant, when the lobster was served she cut into its tail, took a bite and spit it out because the lobster was still cold and frozen in the middle. She discussed with her sister that she would not eat the lobster. She called the waitress over and asked to substitute fried shrimp for the lobster. The waitress replied that she could order fried shrimp but appellant would have to pay for both meals. The appellant objected and the waitress asked appellant if she wanted to talk to the manager. Appellant responded yes.
Appellee came over to appellant's table and, upon being advised of the circumstances, told the waitress to take the lobster back and recook it. Appellant explained that she did not want recooked lobster but would rather have shrimp. Appellee then stated that if appellant did not pay for the lobster, he would call the police. Appellee testified he took the lobster into the kitchen, microwaved it, returned it to appellant's table and walked away. Appellant again cut into the lobster but it was "still transparent." Appellant called for the manager again and stated she would not eat the lobster and would not pay for it. Appellee admits he did not look at or test the lobster either time but contended it was "impossible" for it to be frozen in the middle after it was prepared. Appellee again informed appellant that he would call the police if she refused to pay. Appellant responded, "Well, go ahead." Appellee testified that he thought appellant would "pay up" to avoid having the police called, and by appellee's own admission, "it's never gone that far before, because when the police come, they always pay up and leave."
Appellant and her sister then waited at the table until a Titusville police officer arrived. Appellee claimed that he informed the officer that appellant refused to pay for a meal but denied he said anything else, presumably including appellant's stated reason for refusing to pay. The officer asked appellant what the problem was and appellant told her. According to appellant and her sister, the officer looked at the lobster and said she would not eat it either but nevertheless said, "That's not the point. The point is whether or not you're going to pay for it. If you're not going to pay for it, I have to take you to jail." Appellant replied that she refused to pay for something she found inedible.
Appellant was arrested, handcuffed, led out of the restaurant to a squad car and taken down to the police station where she was charged with defrauding an innkeeper. Before removing appellant from the premises, the police officer asked appellee to execute an affidavit on which the arrest was based. The affidavit, signed by appellee, *408 stated, inter alia, "I want the defendant prosecuted for defrauding an Innkeeper." Appellant was released that night on her own recognizance. The charges were later dropped. Appellant filed suit against appellee and the City of Titusville.[1]
On this record, the trial court granted a summary judgment in favor of defendant/appellee, Bowman, on the theories of malicious prosecution, intentional infliction of emotional distress and slander. We affirm the trial court's entry of judgment on the count alleging slander but we reverse the summary judgment rendered in favor of the appellee on the counts alleging malicious prosecution and intentional infliction of emotional distress. A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law. The moving party must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought. If the evidence will permit different reasonable inferences, it should be submitted to a jury as a question of fact. Moore v. Morris, 475 So.2d 666 (Fla. 1985).
We conclude that there was sufficient evidence in the record to support each of the elements of a claim of malicious prosecution, should a jury choose to believe the testimony. Appellee contends, among other things, that he cannot be liable for malicious prosecution because he never threatened the appellant with arrest; that he had a right to seek police assistance and that the decision to make the arrest lay with the police officer called to the scene. Appellee was only entitled to call the police to the scene for assistance, however, if he had probable cause to believe, and did believe that a patron had obtained food with intent to defraud him by failing to pay. §§ 509.151, 509.161, Florida Statutes (1987). Although the existence of probable cause is normally a question of law for the court, in the present case, this determination depends on a disputed issue of fact, specifically whether the food served to appellant was inedible, as she contended, or whether there was "nothing wrong" with it, as appellee argued.[2]See Sussman v. City of Daytona Beach, 462 So.2d 595 (Fla. 5th DCA 1985).
In this case, a jury could find that appellee did not have probable cause to believe that the appellant was committing fraud on an innkeeper; rather, that the true purpose and intent behind the appellee's calling the police was to attempt to coerce and intimidate this patron into paying money she did not owe. We have no trouble in saying that it is an implied covenant in every restaurant-patron transaction that the restaurant is only entitled to be paid, or retain payment, for food if the food served by the restaurant is edible. Zabner v. Howard Johnson's, Inc., 201 So.2d 824, 827 (Fla. 4th DCA 1967). If a jury were to find that, even though the food was not edible and appellee knew or should have known that it was not edible, he nevertheless persisted in calling the police and executing an arrest affidavit in an effort to coerce payment, a claim for malicious prosecution, including punitive damages, would be sustainable.
We also believe the evidence is sufficient to defeat a summary judgment on the claim for intentional infliction of emotional distress. Intentional infliction of emotional distress is defined in Restatement (Second) of Torts § 46(1) as follows:
46. Outrageous Conduct Causing Severe Emotional Distress.
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, *409 and if bodily harm to the other results from it, for such bodily harm.
As indicated above, the facts could sustain a finding that the appellee's intent was to cause appellant emotional distress sufficient to induce the appellant to pay money she did not owe. Appellee seems to want to argue that the appellant was the architect of her own misery because she refused simply to pay for the meal. Certainly it is true that, when threatened with the ignominy of arrest in a public place, being led away in handcuffs, placed in a squad car, and charged with a petty crime, most people would pay $12.03 no matter how inedible the food. However, appellee cannot avoid a trial on the merits because he happened to confront someone who called his bluff.
The tort of intentional infliction of emotional distress thus applies to the present case provided the conduct is "extreme and outrageous." The difficulty lies in the description of this tort as set forth in comment d to section 46 of the Restatement and adopted by the courts of this state.
The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
Restatement (Second) of Torts § 46 comment d (1965).
This standard is almost impossible to apply in any consistent way essentially because outrageousness is not only highly subjective it is an extremely mutable trait. This problem is exemplified by the high degree of inconsistency between (and within) courts about what is, at any given time or place, "outrageous!" See, e.g., Annotation, Modern Status of Intentional Infliction of Mental Distress As Independent Tort; "Outrage", 38 A.L.R.4th 998. Most of the examples contained in the Restatement comments do not overwhelm the reader with their "atrociousness" and "utter intolerability", which is not to say that these acts should not support a cause of action because they should. The problem is that precious few acts of intentional infliction meet the Restatement's verbal threshold.
The appellate courts of Florida have developed almost a "form" opinion for intentional infliction of emotional distress claims: (1) brief recitation of the facts; (2) quotation of Restatement comment d; (3) pronouncement that the conduct does not meet the Restatement test of atrociousness, utter intolerability, passing all bounds of decency and impulsion to exclaim, "outrageous!". E.g., Eastern Airlines, Inc. v. King, 557 So.2d 574 (Fla. 1990); Swinarski v. Keller, 529 So.2d 1208 (Fla. 4th DCA 1988), rev. denied, 541 So.2d 1172 (Fla. 1989); Food Fair, Inc. v. Anderson, 382 So.2d 150 (Fla. 5th DCA 1980). Most such cases, however, involve situations where the court is simply measuring the level of hatefulness of a defendant's misconduct, such as the recent case of King v. Eastern Airlines, Inc., 536 So.2d 1023 (Fla. 3d DCA 1987) in which the Third District found the airline's failure to properly maintain their aircraft to be outrageous.[3] The present case falls into a different category entirely.
The Restatement, the commentators and this court all agree that outrageousness is more likely to be found where some relationship exists that gives the defendant *410 actual or apparent authority over another or power to affect his interests. Restatement (Second) of Torts § 46 comment e (1965); Dependable Life Ins. Co. v. Harris, 510 So.2d 985, 988 (Fla. 5th DCA 1987). When the conduct smacks of extortion, this tort is likely to be present. See Prosser & Keeton on Torts, § 12 at 61 (1984).[4] Somewhat analogous to the case at bar is liability based on the threat by a person impersonating a police officer to arrest the plaintiff unless she surrenders letters in her possession. Restatement (Second) of Torts § 46 comment e, illustration 5.
If appellant's version of the facts is believed, a jury could find appellee's calculated use of emotional distress to extort money sufficiently outrageous to warrant recovery for the tort of intentional infliction of emotional distress. Moreover, this is not a case such as was found in Southland Corporation v. Bartsch, 522 So.2d 1053 (Fla. 5th DCA), rev. dismissed, 531 So.2d 167 (Fla. 1988) where the merchant did no more than insist upon his legal rights in a permissible way. On this record, it cannot be said as a matter of law that appellee did no more than insist upon his legal rights in a permissible way. That is for a jury to decide.
REVERSED in part, AFFIRMED in part.
DAUKSCH and GOSHORN, JJ., concur.
NOTES
[1] Appellant and the City of Titusville reached an agreement that resulted in a dismissal of the City, thus the City is not involved in this appeal.
[2] A second disputed issue of fact is the amount of the lobster consumed. Appellee contended that "about half" of the lobster was eaten. Appellant claimed she ate no more than the first bite.
[3] This determination was disapproved in Eastern Airlines v. King, 557 So.2d 574 (Fla. 1990).
[4] Both the Restatement and case law also recognize a line of authority finding liability where the relationship that supplies the "special authority" involves a utility, a common carrier, an innkeeper or a creditor. Prosser & Keeton on Torts at 58. Waldon v. Covington, 415 A.2d 1070 (D.C.Ct.App. 1980); Milner Hotels, Inc. v. Dougherty, 195 Miss. 718, 15 So.2d 358 (Miss. 1943). Here appellant came to appellee's establishment trusting him to properly prepare her food and to serve it to her for consumption in a social environment. This setting made appellant especially vulnerable to misconduct by appellee.