596 So.2d 1266 (1992)
Patricia McALPIN and B.J. McAlpin, Appellants,
v.
Marc P. SOKOLAY and Flagler Hospital, Appellees.
No. 91-1227.
District Court of Appeal of Florida, Fifth District.
April 17, 1992.
*1267 William L. Townsend, Jr. of Walton, Townsend & McLeod, Palatka, for appellants.
John R. Saalfield of Saalfield, Catlin, Coulson & Etheridge, Jacksonville, for appellee Sokolay.
Gregory F. Reis of Adams, Hill, Reis, Adams & Hall, Orlando, for appellee Flagler Hosp., Inc.
GOSHORN, Chief Judge.
Patricia and B.J. McAlpin appeal from the order dismissing their three-count second amended complaint with prejudice. We reverse the dismissal only as to that part of Count I which alleges a cause of action for intentional infliction of emotional distress against Dr. Marc P. Sokolay.[1]
The second amended complaint alleges, in pertinent part:
COMMON FACTS
7. From sometime early in 1989, PATRICIA McALPIN began having difficulty swallowing and experienced a sensation of her esophagus collapsing, symptoms of a condition later diagnosed as "achalasia"; the symptoms were frightening to her and caused panic and difficulty of speech during the actual attacks.
8. She sought medical treatment for the condition from Michael Sanders, M.D., a St. Augustine physician.
9. Dr. Sanders prescribed x-rays of her upper gastrointestinal tract to aid in diagnosis and referred her to Defendant, FLAGLER HOSPITAL, for such x-rays.
10. Upon entering FLAGLER HOSPITAL, on or about November 29, 1989, for such x-rays, PATRICIA McALPIN made payment arrangements with the agent of FLAGLER HOSPITAL at the payment "desk" and was directed to the radiology or x-ray facility within the hospital.
11. At the x-ray facility, Plaintiff was told by hospital staff to remove her clothes and pull on a back-tie hospital gown, leaving her clothes in the adjoining "locker room"; she was then directed to the x-ray room and the staff attending it.
12. The x-ray equipment and the group of x-ray assistants, technicians and attendants were under the direction and control of Defendant, MARC P. SOKOLAY, M.D., and the authority for such direction and control had been delegated to him by Defendant, FLAGLER HOSPITAL, INC., and Defendant SOKOLAY had the apparent authority by virtue of such delegation to direct and control security personnel employed by the hospital.
13. At the time of entering the presence of DR. SOKOLAY MRS. McALPIN was in physical distress because of her medical symptoms, was in emotional distress because of her fear that such symptoms indicated cancer, and was reasonably expecting *1268 concern and care from all hospital staff over and above minimum accepted standards of medical care because of the advertising of such non-medical humanitarian benefits made by FLAGLER HOSPITAL to the public; all of which was known or should have been known to Defendant, MARC SOKOLAY.
14. In the presence of other staff, and without warning or regard to her condition, Defendant, MARC SOKOLAY, began to verbally assault Plaintiff in loud and abusive tones, claiming that he (SOKOLAY) was a personal friend of "Kluger" and that Plaintiff owed "Kluger" money. He stated that she would not pay the bill, based on his knowledge of "Kluger". SOKOLAY refused to give the x-ray procedure and picked up a telephone alleging that he would have MRS. McALPIN physically removed from the hospital by security personnel. MRS. McALPIN attempted to explain that she had a business dispute with Dr. Kluger, related to real property and completely unrelated to any medical billing or procedure, but her throat constricted in the panic brought on by the unexpected attack, she became violently nauseous, and she had difficulty getting the words out. MRS. McALPIN began sobbing, ran from the room in panic, and was unable to find the "locker room" where she had left her purse and clothes. In continuing panic, and nude except for the hospital gown, she began running through the hospital halls.
15. A nurse finally asked Plaintiff what was wrong and upon Plaintiff being unable to answer other than continuing to cry, took Plaintiff into an office and, after a considerable amount of time, calmed Plaintiff to the point where her physical symptoms, and distress abated so that she was able to talk. The nurse then called an administrator of the hospital who told the nurse to take a statement. After giving the statement, and recovering her clothes and purse, MRS. McALPIN left the hospital.
16. Throughout the remainder of that day Plaintiff experienced continuous vomiting attacks and recurrent, severe symptoms of the kind induced by SOKOLAY'S actions.
17. MRS. McALPIN obtained the same procedure the next day at a different hospital without incident, which procedure led to the immediate diagnosis of her condition.
* * * * * *
COUNT I
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
19. The actions of Defendant SOKOLAY were designed and did take advantage of the vulnerability of Plaintiff, submitting as she was to diagnostic tests while in fear for her health and depending for comfort and solace upon the caring and supporting atmosphere to be generated by Defendant, FLAGLER HOSPITAL, INC., in its representations to the public, in order to cause the minimum amount of pain and distress to Plaintiff.
20. Defendant, MARC SOKOLAY'S, actions were conducted within the scope of his employment and were, however misguided, in furtherance of the interests of Defendant, FLAGLER HOSPITAL, INC., in that he withheld the service and attacked Plaintiff because he judged Plaintiff would not pay the charge for such service.
21. Defendant, MARC SOKOLAY, was in a position to inflict grievous harm greatly over and above the same actions in a different setting and relationship because of the advertised caring attitude toward patients of Defendant, FLAGLER HOSPITAL, INC., and his position as authority figure due to his evident control over the staff and equipment of the x-ray facility as delegated to him by the hospital; and did inflict grievous emotional distress on Plaintiff.
22. The actions of Defendant, MARC SOKOLAY, given their context, his position *1269 and Plaintiff's vulnerability, were so outrageous and extreme in degree as to arouse the resentment of the average member of the community so that such average member would exclaim "outrageous!" within the test of Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985).
23. As a result of the actions alleged Patricia McALPIN suffered humiliation, physical pain and suffering, emotional distress, lasting psychological damage, mental anguish, loss of capacity for enjoyment of life, expense of medical care and treatment, loss of ability to earn money, [and] aggravation of previously existing condition. The losses are either permanent or continuing and Plaintiff will continue to suffer the losses in the future.
Mrs. McAlpin argues on appeal that the trial court erred by determining as a matter of law that the alleged conduct was not sufficiently outrageous to state a cause of action against Dr. Sokolay for intentional infliction of emotional distress. Mrs. McAlpin argues that given Dr. Sokolay's relationship to her as a medical doctor and his knowledge of her medical problems, his abusive conduct in the x-ray room while she was about to receive an x-ray was sufficiently outrageous to survive a motion to dismiss. We agree.
In 1985, the Florida Supreme Court recognized the tort of intentional infliction of emotional distress. Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 278 (Fla. 1985) (adopting the Restatement (Second) of Torts § 46 (1965) and the accompanying comments). Section 46 of the Restatement (Second) of Torts (1965) provides in pertinent part:
One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
In Dependable Life Ins. Co. v. Harris, 510 So.2d 985, 986 (Fla. 5th DCA 1987), this court set out the necessary elements for the tort of intentional infliction of emotional distress: (1) the conduct was deliberate or reckless (the wrongdoer knew or should have known that emotional distress would likely follow); (2) the conduct was outrageous (the wrongdoer exceeded all bounds of decency); (3) the conduct caused the emotional distress; and (4) the emotional distress was severe.
When reviewing the sufficiency of the complaint to state a cause of action, the trial court must determine in the first instance whether the alleged conduct was extreme and outrageous enough to permit recovery. Scheller v. American Medical Int'l Inc., 502 So.2d 1268, 1271 (Fla. 4th DCA), review denied, 513 So.2d 1060 (Fla. 1987). Here, the trial court concluded that Dr. Sokolay's conduct, "albeit not a favored method of unpaid bill discussion, did not rise to the level of outrageousness required to sustain" a claim of intentional infliction of emotional distress.
However, the allegations of the complaint, if proved, support Mrs. McAlpin's argument that a jury as the trier of fact could find that Dr. Sokolay's conduct was reckless and utterly outrageous in a civilized community. By verbally abusing and shouting at Mrs. McAlpin when she entered the x-ray room, Dr. Sokolay acted in deliberate disregard of the high degree of probability that emotional distress would follow. See Restatement (Second) of Torts § 46 comment i (1965) (stating that liability for outrageous conduct, which causes severe emotional distress, arises when the wrongdoer desires to inflict severe emotional distress, when the wrongdoer knows that severe emotional distress is certain, or substantially certain, to result from his conduct, or when the wrongdoer acts recklessly "in deliberate disregard of a high degree of probability that the emotional distress will follow"). Given the relationship between a doctor and a patient, Dr. Sokolay's alleged conduct in the x-ray room meets the threshold test of extreme conduct which would cause an average member of the community to exclaim, "Outrageous!" *1270 See id. comment d (stating that liability arises only when the wrongdoer's conduct is so outrageous in degree, that the conduct exceeds all bounds of decency and that a civilized community would find the conduct is atrocious and intolerable to the point to lead an average member of the community to exclaim, "Outrageous!"); see also Lashley v. Bowman, 561 So.2d 406, 409-10 (Fla. 5th DCA 1990) (holding that "outrageousness is more likely to be found where some relationship exists that gives the defendant actual or apparent authority over another or power to affect his interests").
In summary, the complaint alleges that Mrs. McAlpin went to Dr. Sokolay to receive a diagnostic x-ray for her medical problems, and instead, she received verbal abuse which worsened her condition. If true, a jury could find that Dr. Sokolay's conduct was not only unprofessional but also actionable under these circumstances. Therefore, we find the complaint sufficiently alleges outrageous conduct to warrant denial of Dr. Sokolay's motion to dismiss for failure to state a cause of action. Accordingly, we reverse only the part of the order dismissing Count I for intentional infliction of emotional distress against Dr. Sokolay and remand the cause for further proceedings.
AFFIRMED in part; REVERSED in part; and REMANDED.
COBB, J., and RICHARDSON, E.J., Associate Judge, concur.
NOTES
[1] We affirm the dismissal of Counts II and III and the dismissal of the part of Count I which attempts to assert a claim against Flagler Hospital. See Sussman v. Florida East Coast Properties, Inc., 557 So.2d 74 (Fla. 3d DCA), review denied, 574 So.2d 143 (Fla. 1990); Nazareth v. Herndon Ambulance Service, Inc., 467 So.2d 1076 (Fla. 5th DCA), review denied, 478 So.2d 53 (Fla. 1985).