657 So.2d 1210 (1995)
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Appellant/Cross-Appellee,
v.
Ellen NOVOTNY, Appellee/Cross-Appellant.
No. 94-1319.
District Court of Appeal of Florida, Fifth District.
June 23, 1995.
Rehearing Denied August 4, 1995.
*1211 Allen J. McKenna, Garwood, McKenna & McKenna, P.A., Orlando, for appellant/cross-appellee.
Charles R. Steinberg, Charles R. Steinberg, P.A., Orlando, for appellee/cross-appellant.
W. SHARP, Judge.
State Farm appeals from a final judgment which awarded Novotny money damages on her claims for intentional infliction of emotional distress and fraudulent misrepresentation after Novotny was forced to resign her employment with State Farm as a claims representative. The jury awarded Novotny $100,000 in compensatory damages and $400,000 in punitive damages. The trial court reduced the awards to $25,000 and $75,000, respectively. Novotny cross-appeals the reduction. State Farm argues that its conduct was not sufficient to support either claim. We agree and reverse.
Novotny was hired as a claims representative by State Farm in 1988. In August of 1989, Novotny filed a claim with State Farm, who was also her insurer, for damage to the right front fender and door of her personal vehicle. Her claim was assigned to a coworker, Blackwell, who prepared an estimate and authorized painting of the damaged portion of her car. Subsequently, Blackwell told Novotny that due to a personal relationship he had with the manager of the body shop authorized to repair her vehicle, her entire car would be painted at no extra charge.
In August of 1991, State Farm received complaints from the owner of the body shop that had painted Novotny's vehicle. The nature *1212 of these complaints was that State Farm employees were accepting cash in exchange for business referrals. State Farm conducted an investigation and discovered Novotny's car had been painted without charge.
In late August of 1991, in accordance with standard company procedure, State Farm representatives conducted interviews with employees at a nearby Holiday Inn. This procedure was premised on the idea that interviews away from the office alleviated potential embarrassment or altercation problems which might arise if such interviews were conducted in the office. Novotny was one of the employees interviewed.
On the day in question, Dale Grainger, Novotny's immediate supervisor, asked her to wait in the office rather than go to lunch. Novotny knew that Fran Zaharias (who was in charge of the office where Novotny worked) and other State Farm representatives were interviewing employees off-premises, and that Blackwell had been terminated after such interview the previous day. Grainger then took Novotny to the Holiday Inn in his car. Upon arrival, Novotny questioned Grainger about what was going on. He told her that she would be coming back to the office, and that he did not know what was going on but that if he did know, he would tell her. However, Grainger knew the nature and reasons for the interviews, and that Novotny could be fired.
Novotny was taken to a guest room where she was seated at a rectangular table and interviewed by Zaharias, Fred Marsh (a regional vice president), and Robert McKenna (a regional audit consultant). Novotny was questioned for 45 minutes, primarily by McKenna, until she conceded she had accepted a free paint job on her car. At that point, Marsh informed her she could resign, but if she refused to do so, she would be fired. Novotny resigned.
At the conclusion of the interview, Grainger drove Novotny back to the office. During that ride, Novotny began crying and threatened to kill herself. She subsequently received treatment by a psychiatrist, accumulating medical bills totaling $1,000.
The elements of a cause of action for the intentional infliction of emotional distress are: (1) the wrongdoer's conduct was intentional or reckless, i.e., he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, i.e., beyond all bounds of decency, atrocious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. Williams v. City of Minneola, 619 So.2d 983, 986 (Fla. 5th DCA 1993).
Initially we note that State Farm had a legal right to terminate Novotny's employment. Food Lion, Inc. v. Clifford, 629 So.2d 201 (Fla. 5th DCA 1993); Dowling v. Blue Cross of Florida, 338 So.2d 88 (Fla. 1st DCA 1976). Smith v. Piezo Technology & Professional Administrators, 427 So.2d 182 (Fla. 1983); Gibbs v. H.J. Heinz Co., 536 So.2d 370 (Fla. 5th DCA 1988); Hartley v. Ocean Reef Club, Inc., 476 So.2d 1327, 1330 (Fla. 3d DCA 1985).
We have previously held that the tort of intentional infliction of emotional distress is not created by a person who does no more than pursue his legal rights in a permissible way, even if he knows his conduct will cause emotional distress to the plaintiff. Food Lion; Southland Corp. v. Bartsch, 522 So.2d 1053 (Fla. 5th DCA 1988). That is what essentially occurred in this case. State Farm was pursuing an investigation into employee conduct which it had a legal right, and perhaps an obligation, to do. And it had an absolute right to terminate Novotny. Smith; Gibbs; Hartley.
Further, we do not find that State Farm's conduct in subjecting Novotny to the interview process was sufficiently egregious to give rise to the tort of intentional infliction of emotional distress. Liability for this tort will lie only where the defendant's conduct is so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be deemed utterly intolerable in a civilized community. Eastern Airlines, Inc. v. King, 557 So.2d 574 (Fla. 1990); Food Lion; McAlpin v. Sokolay, 596 So.2d 1266 (Fla. 5th DCA 1992); Southland. To be sufficient, the recitation of facts must arouse *1213 resentment in an average member of the community, and cause him to exclaim "outrageous." Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985); Restatement 2d, section 46. It is not enough that the intent is tortious or criminal; it is not enough that the defendant intended to inflict emotional distress; and it is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort. Food Lion; Restatement 2d, section 46. In addition, the subjective response of the person who is the target of the actor's conduct does not control the question of whether the tort occurred. Southland; Ponton v. Scarfone, 468 So.2d 1009 (Fla. 2d DCA), 478 So.2d 54 (Fla. 1985).
As we noted in Lashley v. Bowman, 561 So.2d 406 (Fla. 5th DCA 1990), the standard of outrageousness can often be difficult to apply and may be "highly subjective" and "extremely mutable."[1] But that is not so in this case. Novotny's subjective reaction to her termination was not foreseeable,[2] but even if it had been that is not the sole determinative factor. Ponton. In this case, State Farm had a rational, objective purpose in pursuing interviews away from the office, and the method utilized in conducting those interviews was not so egregious as to constitute outrageousness. State Farm was merely pursuing an investigation it had a legal right to pursue, in a legally permissible way. Thus, the claim for intentional infliction of emotional distress is not supportable. See also Food Fair, Inc. v. Anderson, 382 So.2d 150, 151-152 (Fla. 5th DCA 1980).
Likewise, we find the evidence insufficient to support the fraudulent misrepresentation claim. The elements required to establish a claim of fraudulent misrepresentation are: (1) a knowingly false statement; (2) an intent that the statement will be acted on; (3) and detrimental reliance on the statement by the plaintiff. Nicholson v. Kellin, 481 So.2d 931 (Fla. 5th DCA 1985); Blake v. Munce, 426 So.2d 1175 (Fla. 5th DCA 1983); Amazon v. Davidson, 390 So.2d 383 (Fla. 5th DCA 1980). Accord, Lance v. Wade, 457 So.2d 1008, 1011 (Fla. 1984); S.H. Inv. & Development Corp. v. Kincaid, 495 So.2d 768 (Fla. 5th DCA 1986), rev. denied, 504 So.2d 767 (Fla. 1987); A.S.J. Drugs, Inc. v. Berkowitz, 459 So.2d 348 (Fla. 4th DCA 1984); Vance v. Indian Hammock Hunt & Riding Club, 403 So.2d 1367 (Fla. 4th DCA 1981). The false statement must pertain to a material fact, Gutter v. Wunker, 631 So.2d 1117, 1118 (Fla. 4th DCA 1994); and intentional misconduct is a necessary element. Rappaport v. Jimmy Bryan Toyota of Ft. Lauderdale, Inc., 522 So.2d 1005 (Fla. 4th DCA 1988). Where detrimental reliance is missing, the claim can not be sustained. See generally, McConnell v. Eastern Air Lines, Inc., 499 So.2d 68 (Fla. 3d DCA 1986); Tippett v. Frank, 238 So.2d 671, 673 (Fla. 3d DCA 1970); Bibb v. Bickford, 149 So.2d 592, 594 (Fla. 1st DCA 1963).
The only evidence in the record to support a fraudulent misrepresentation claim are Grainger's statements to Novotny after they arrived at the Holiday Inn that he did not know what was "going on." Grainger conceded he knew this statement was untrue when he made it. However, there is an essential legal difference between a lie and fraud. Fraud requires inducing a person to take an action he has no obligation to take, nor intent to take without the misrepresentation.
In this case there was no evidence that Grainger's untrue statements were made to induce Novotny to attend the interview. Grainger falsely disclaimed knowledge of what was occurring. Although his statements were untrue, they were not made to *1214 induce an act on the part of Novotny. At the time the statements were made, Novotny already knew that employees were being interviewed and terminated, and she had already made the decision to go to the interview. She was, in fact, already there when Grainger's statements were made. Since there is no evidence that Novotny relied on Grainger's statements in going to the Holiday Inn for the interview, the fraudulent representation action must fail.
REVERSED.
GRIFFIN, J., and ORFINGER, M., Senior Judge, concur.
NOTES
[1] Lashley is distinguishable because in Lashley the actor utilized the emotional distress of arrest to accomplish what amounted to extortion, the record suggesting that the actor knew he had no factual basis or legal right to swear out the arrest affidavit.
[2] McKenna testified that he personally had conducted 150 interviews of this type without incident. Further, Novotny was taking prescription amphetamine-like diet pills, unbeknown to State Farm. Her psychiatrist testified at trial that had he known she had been so medicated, it would have affected his diagnosis because these pills could have caused an increased startle ability and increased stimulation.