**Rick SERINA, Plaintiff,**

v.

**ALBERTSON'S, INC., Defendant.**

**No. 87-1416-CIV-T-17(C).**

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 4, 1990.

See also, 128 F.R.D. 290.

Jerrold K. Phillips, Cheeseman, Harris and Phillips, Tampa, Fla., for plaintiff.

J. Scott Brasfield, Williams, Brasfield, Wertz, Fuller & Lamb, St. Petersburg, Fla., and Richard Appel, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

The cause is before the Court on Defendant's motion for summary judgment and Defendant's request for oral argument,
filed May 16, 1990; Plaintiff's motion for partial summary judgment; response to Defendant's motion for summary judgment; and Plaintiff's request for oral argument filed June 15, 1990; and Defendant's response thereto filed July 9, 1990.

### STANDARD OF REVIEW

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–7 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed. at 273.

The Court also said, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at p. 324, 106 S.Ct. at p. 2553, 91 L.Ed.2d at p. 274.

### UNDISPUTED FACTS

1. Plaintiff was employed by Defendant and held several store level management positions from approximately July 18, 1979, until June 25, 1987.

2. On approximately February 25, 1981, Plaintiff began taking part in Defendant's bonus plan. Through a series of written letters from Defendant to Plaintiff, which both sides concede were part of Plaintiff's employment contract, it was established that Plaintiff was to receive a fixed salary plus a percentage of his "... total store profits as reflected by the quarterly operating statement." As Plaintiff was promoted this percentage ranged from 1% to 3%.

3. Defendant reported quarterly profits to Plaintiff through a report known as the "prorated operating statement". It was from this report that Plaintiff's bonus was calculated.

4. Defendant also maintained an "actual operating statement" for the purpose of reporting quarterly profits which it sent to its corporate officials only.

5. The "actual operating statement" provided said corporate officials with a different calculation of store earnings than the "prorated operating statement". The quarterly profits reported in the "prorated operating statement" were lower than the quarterly profits reported in the "actual operating statement" due to the deduction of a "prorated fixed expense" found in the "prorated operating statement" but not in the "actual operating statement".

6. Plaintiff alleges Defendant deprived Plaintiff of the bonus Plaintiff should have received by using the "prorated operating statement" as opposed to the "actual operating statement" for the purpose of calculating Plaintiff's bonus and, subsequently, brought this action in tort for fraud.

## I. REQUESTS FOR ORAL ARGUMENT

Both the Plaintiff's and the Defendant's requests for oral argument, as to their respective motions for summary judgment, are *denied.*

## II. DEFENDANT'S REQUEST FOR SUMMARY JUDGMENT

Defendant has moved for summary judgment on the grounds that Plaintiff cannot establish a) conduct or b) damages separate and distinct from Plaintiff's rights pursuant to contract. Accordingly, Defendant alleges Plaintiff's cause of action is in contract and not in tort.

## A) CONDUCT

 Defendant's first argument with regards to its motion for summary judgment is that the Plaintiff has not established a tort independent of the breach of the contract. The Defendant has stated in its motion for summary judgment that, "In order to state a cause of action in tort, an alleged breach of contract must be accompanied by some *additional conduct* which amounts to a separate and independent tort distinguishable from the breach of contract." (Memorandum of Law In Support of Albertson's Motion For Summary Judgment, p. 9–10) (emphasis added). The Defendant seems to be seeking to establish the premise that the conduct which supplies the basis for the breach of contract action cannot be the same conduct which serves as the basis for the tort action, and seems to be basically using principles of law from punitive damages and breach of contract cases to do so.

The idea of a "tort independent of the breach of contract" is found predominantly in Florida decisions dealing with punitive damages and breach of contract claims. While the Court realizes the issue here is not punitive damages, the rules of law established in the punitive damages and breach of contract cases are relied upon by the Defendant.

The general rule in Florida is that punitive damages are not recoverable for a breach of contract claim unless, *"the acts constituting a breach of contract* also amount to a cause of action in tort ..."* *Lewis v. Guthartz,* 428 So.2d 222, 223 (Fla. 1982), *citing Griffith v. Shamrock Village,* 94 So.2d 854, 858 (Fla.1957), (emphasis added). The Second District Court of Appeal of Florida also stated, "... we will not sustain an award of punitive damages for the breach of a contract save in the circumstances *where the conduct producing the breach is itself endowed with the characteristics of an independent, actionable tort." Lake Placid Holding Co. v. Papar-*

*one,* 508 So.2d 372, 376 (Fla. 2d DCA 1987), *citing Porter v. Wilson, Walch, Fortner, Robinson & Besse,* 384 So.2d 190 (Fla. 2d DCA 1980), (emphasis added).

The Defendant has cited to many cases, among them *Lewis* and *Lake Placid Holding Co.,* in support of its proposition. As stated earlier, these cases concern punitive damages and breach of contract. Therefore, in analyzing this issue as it would be analyzed in a punitive damages and breach of contract case, this Court must disagree with the Defendant that the requisite separate and independent tort must arise out of separate conduct from that which led to the breach of contract. It appears that the independent tort can be derived from the same conduct which led to the breach of contract, as long as the elements necessary to prove that independent tort are alleged and proven, and as long as one is utilizing breach of contract and punitive damages principles.

## B) DAMAGES

The Defendant's next argument in favor of summary judgment is that Plaintiff must establish damages separate and distinct from any contract damages. In support of its position, Defendant points to a series of Florida and Eleventh Circuit Court of Appeals cases dealing with Florida's adoption of the "economic loss rule".

*Florida Power & Light Co. v. Westinghouse Electric Corp.,* 785 F.2d 952 (11th Cir.1986), dealt comprehensively with the "economic loss rule" in Florida. In *Florida Power,* the plaintiff brought claims for breach of express warranties and negligence when defendant allegedly supplied plaintiff with defective goods. *Id.* at 953. The 11th Circuit felt there was no clear and controlling precedent in Florida regarding economic loss claims brought in tort without accompanying property damage or physical injury and certified two questions to be answered by the Supreme Court of Florida. These two questions were:

(1) Whether Florida law permits a buyer under a contract for goods to recover economic losses in tort without a claim for personal injury or property damage

to property other than the allegedly defective goods.

(2) If Florida law precludes recovery for economic loss in tort without a claim for personal injury or property damage to other property, whether this rule should be applied retroactively in this case. *Id.* at 953.

The first question is obviously more pertinent to the instant case and was answered in the negative by the Supreme Court of Florida in *Florida Power & Light Co. v. Westinghouse Electric Corp.,* 510 So.2d 899 (Fla.1987). The Florida Supreme Court decided to follow the "majority view that contract principles are more appropriate than tort principles to resolve purely economic claims." *Id.* at 900. Subsequently, the 11th Circuit affirmed the trial court's granting of partial summary judgment in favor of defendant on the negligence claim in *Florida Pwr. & Light Co. v. Westinghouse Electric Corp.,* 835 F.2d 817 (11th Cir.1988). The "economic loss rule" of disallowing tort actions for recovery of economic damages without accompanying physical injury or property damage was also followed in a case involving a contract for services. *See AFM Corp. v. Southern Bell Tel. & Tel.,* 515 So.2d 180 (Fla.1987).

Plaintiff maintains in its response to Defendant's motion for summary judgment that an intentional tort, such as fraud, is treated differently from simple negligence in the context of a contract. The Court agrees with the Plaintiff that the cases cited by Defendant with regards to the "economic loss rule" have dealt with negligence and not intentional torts, and it appears that neither the Supreme Court of Florida nor the 11th Circuit has dealt specifically with the issue of fraud and the "economic loss rule". However, the Court must also agree with Defendant in its memorandum of opposition to Plaintiff's motion for partial summary judgment that Plaintiff has basically cited to cases which have allowed breach of contract and fraud claims to be brought in the same lawsuit. Furthermore, these cases do not really put forth any reasoning on which the Court could base different treatment for fraud

and negligence in the context of the "economic loss rule". Therefore, it appears the task of analyzing a fraud claim within the confines of the "economic loss rule" has fallen on the Court's shoulders.

It could be argued there are Florida cases which *suggest* divergent treatment for intentional torts and negligence with respect to the "economic loss rule". At least one Florida court has interpreted the "economic loss rule" to be applicable to only negligence actions. The Fourth District Court of Appeals of Florida stated, "Florida has long since joined the majority view in the United States in holding that recovery for purely economic losses under a *negligent tort theory* is normally not allowed absent a claim for personal injuries or property damage." *Latite Roofing Co., Inc. v. Urbanek*, 528 So.2d 1381, 1382 (Fla. 4th DCA 1988) (citations omitted) (emphasis added). Furthermore, the 11th Circuit in *Pinnacle Port Community Association, Inc. v. Orenstein*, 872 F.2d 1536 (11th Cir. 1989), allowed the plaintiff to sue the defendant for economic loss because there was property damage and because, "the claim involves an affirmative act by NAMI, with resulting damage to property, not mere loss due to incomplete or unsatisfactory contractual performance." *Id.* at 1546. While these cases may hint at the possibility of disparate treatment for negligence and intentional torts in the "economic loss rule", they are also far from solid precedent establishing negligence and intentional torts should not be treated equally.

Furthermore, there is a Florida case which may suggest fraud and negligence receive the same treatment under the "economic loss rule". *Belford Trucking Co., Inc. v. Zagar*, 243 So.2d 646 concerned itself with the tort of conversion. The Fourth District Court of Appeals stated, "A mere obligation to pay money may not be enforced by a conversion action, and an action in tort is inappropriate where the basis of the suit is contract, either express or implied." *Id.* at 648 (citations omitted). While *Belford* did not explicitly state it was invoking the "economic loss rule", its prin-

ciple is still evident with regards to disallowing tort actions when the basis of the dispute is contractual. Even though the instant case involves fraud as opposed to conversion, both fraud and conversion are intentional torts. Therefore, in light of *Belford*, it could be argued a tort claim of fraud is also "inappropriate" when the basis of the dispute is contractual.

Since it does not appear that the issue of fraud and the "economic loss rule" has been expressly addressed either in Florida, or in the 11th Circuit applying Florida law, the Court feels compelled to look to other states that have dealt with the issue. One such case is *Northern States Power Co. v. International Telephone and Telegraph Corp.*, 550 F.Supp. 108 (M.D.Minn.1982). In that case, a Minnesota District Court held,

"At best, it is arguable that recovery for merely negligent misrepresentation should not be allowed since *Superwood [Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981)] disallowed negligence action for economic loss in commercial transactions. Misrepresentation is a distinct tort, however, and *Superwood* did not address whether this right of action should be discontinued in commercial settings. It is well established in Minnesota that claims for fraudulent inducement to contract and misrepresentation may be brought in addition to claims in contract and warranty. *Superwood* did not mention this line of cases, and this court sees no reason to read that case to bar all tort recovery." *Id.* at 112 (citations omitted).

However, there is a split of authority between the states regarding fraud and the "economic loss rule". In *Public Service Enterprise Group, Inc. v. Philadelphia Electric Co.*, 722 F.Supp. 184 (D.N.J.1989), the District Court of New Jersey drew a distinction between fraud extraneous to the contract and fraud interwoven with the breach of contract in the application of fraud to the "economic loss rule". The court explained that,

"Here, PECO says, the plaintiffs' fraud claims (to the extent PECO understands

them, see, *infra* ) are based solely upon misrepresentations and concealments of facts by PECO with respect to operations at the Peach Bottom plant; that is, fraudulent statements relating to PECO's performance of the Owners Agreement. Such fraud is not extraneous to the contractual dispute among the parties, but is instead but another thread in the fabric of plaintiffs' contract claim. Like the Plaintiffs' other tort claims, its fraud claim is undergirded by factual allegations identical to those supporting their breach of contract counts ... This fraud did not induce the plaintiffs to enter into the original agreement nor did it induce them to enter into additional undertakings. It did not cause harm to the plaintiffs distinct from those caused by the breach of contract ... *Id.* at 201.

While the Court realizes it must view this issue in the light most favorable to the nonmoving party, the Court is not required to manufacture an opinion from non-existent precedent to coincide with Plaintiff's argument, which is exactly what would happen if the Court were to adopt Plaintiff's position. The torts of negligence and fraud are distinct torts with distinct elements. However, there is simply no basis presented or found for disparate treatment of fraud and negligence within the "economic loss rule". Furthermore, the Court finds the holding in *Public Service Enterprise Group* to be persuasive when the District Court of New Jersey refused to make an exception for fraud in the "economic loss rule" when the facts surrounding the tort claim are interwoven with the facts surrounding the breach of contract claim.

Let it be noted that the Court must surmise for itself whether the facts surrounding the tort claim in the instant case would be interwoven with the facts surrounding a *hypothetical* breach of contract claim, as the Plaintiff failed to bring such a cause of action. In doing so, the Court concludes the facts surrounding a tort and breach of contract claim would be intertwined. Furthermore, the Court notes Plaintiff moved to amend his complaint to include a breach of contract claim, but was denied leave to

do so due to the untimeliness of the motion. There is something to be said for aiming before one shoots in order to hit the target.

Therefore, this Court chooses to disagree with Defendant's analysis with regards to the conduct issue, but agrees with Defendant on its analysis of the damages issue. The Court acknowledges this may sound contradictory but reconciles its holding by theorizing that the rules of law established in the breach of contract and punitive damages cases, with respect to a tort independent of the breach of contract issue, may be proscribed by the "economic loss rule".

Simply stated, one may be able to bring an action for punitive damages in a breach of contract case when the facts surrounding the breach of contract and the separate and distinct tort are interlaced, but may be precluded from bringing a *separate tort action* under the same scenario by the "economic loss rule". Accordingly it is

ORDERED that Defendant's motion for summary judgment be *granted;* Plaintiff's motion for partial summary judgment be *denied;* and the cause of action be *dismissed.* The Clerk of the Court shall enter a judgment in favor of Defendant and against Plaintiff

DONE and ORDERED.