Denise K. LIBERTI, Shannon E. Green, Christine E. Ochoa, Kimberly N. Koth, Angela C. Harper, and Alison H. Swanson, Plaintiffs,

v.

WALT DISNEY WORLD CO.,
a Delaware corporation,
Defendant.

No. 94–533–CIV–ORL–19.

United States District Court,
M.D. Florida,
Orlando Florida.

Sept. 8, 1995.

Christi Leigh Underwood, Jon Martin Wilson, Foley & Lardner, Roy B. Dalton, Jr., Yvonne M. Yegge, Martinez & Dalton, P.A., Orlando, FL, for plaintiffs.

Jerry Ray Linscott, James Vincent Etscorn, Joanne Braddock Lambert, Baker & Hostetler, Orlando, FL, for defendant.

### ORDER

FAWSETT, District Judge.

This cause came before the Court on the following matters:

1. Defendant Walt Disney World Co.'s, Motion for Summary Judgment on Counts I–VI (intentional infliction of emotional distress) and VII–XII (invasion of privacy) and supporting memorandum of law (Doc. Nos. 168 & 169, filed July 10, 1995); the Affidavit of Carol S. Pacula (Doc. No. 171, filed July 10,

1995); and Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment as to Counts I–VI (intentional infliction of emotional distress) and VII–XII (invasion of privacy) (Doc. No. 282, filed August 7, 1995);

2. Plaintiffs' Motion for Summary Judgment as to Walt Disney World's Twenty-first Affirmative Defense and supporting memorandum of law (Doc. Nos. 177 & 178, filed July 19, 1995). Defendant failed to file a response in accordance with Local Rule 3.01(b).

3. Plaintiffs' Motion to Sever Claim for Attorney Fees and supporting memorandum (Doc. No. 180, filed July 21, 1995). Defendant failed to file a response in opposition in accordance with Local Rule 3.01(b).

4. Plaintiffs' Motion for Summary Judgment as to Defendant's Twenty-fifth and Twenty-sixth Affirmative Defenses and memorandum in support thereof (Doc. Nos. 186 & 187, filed July 31, 1995); Defendant's Memorandum in Opposition to Motion for Summary Judgment as to Defendant's Twenty-fifth and Twenty-sixth Affirmative Defenses (Doc. No. 296, filed August 22, 1995).

5. Defendant's Motion for Summary Judgment as to Counts I—VI (intentional infliction of emotional distress) VII–XII (invasion of privacy), XXV–XXX (negligent supervision) and XXXI–XXXVI (negligent retention) and memorandum in support thereof (Doc. Nos. 188 & 189, filed July 31, 1995); Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment as to Counts I–VII (intentional infliction of emotional distress), VII–XII (invasion of privacy), XXV–XXX (negligent supervision) and XXXI–XXXVI (negligent retention) of the Amended Complaint (Doc. No. 302, filed August 28, 1995);

6. Defendant's Motion for Partial Summary Judgment as to Counts XXXVII–XXXXII of the Amended Complaint and memorandum in support thereof (Doc. Nos. 191 & 192, filed August 1, 1995); Plaintiffs' Memorandum in Opposition to Motion for Partial Summary Judgment as to Counts XXXVII–XXXXII of the Amended Complaint (Doc. No. 301, filed August 28, 1995);

7. Defendant's Motion for Summary Judgment as to Counts I–VI and Counts VII–XII of the Amended Complaint, memorandum in support thereof with appendix (Doc. Nos. 236, 237 & 238, filed August 1, 1995); Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment as to Counts I–VI and Counts VII–XII of the Amended Complaint (Doc. No. 303, filed August 28, 1995);

8. Defendant's Dispositive Motion for Summary Judgment as to Counts XVIX [sic], XXII, XXIII and XXIV of the Amended Complaint, memorandum in support thereof with appendix (Doc. Nos. 239, 240, & 241, filed August 1, 1995); Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment as to Counts XVIX, XXII, XXIII and XXIV of the Amended Complaint (Doc. No. 304, filed August 28, 1995);

9. Plaintiffs' Motion with Memorandum in Support for Summary Judgment as to Defendant's Fifteenth Affirmative Defense (Doc. No. 247, filed August 1, 1995) and Defendant's Memorandum in opposition to Motion for Summary Judgment as to Defendant's Fifteenth Affirmative Defense (Doc. No. 300, filed August 28, 1995).

### Additional filings:

Defendant filed the depositions or partial deposition transcripts of the following individuals on August 1, 1995: George Bradshaw Allen, III (Doc. Nos. 194 & 245); Charles P. Aitken (Doc. No. 195); John Giangrossi (Doc Nos. 196, 197, 198, 199 & 200); Shannon E. Green (Doc. Nos. 201, 202, 203, & 204); Richard Harbin (Doc. No. 205); Angela Harper (Doc. Nos. 206, 207, 208, & 209); Kimberly Noel Koth (Doc. Nos. 210, 211, 212, 213, & 214); Denise Liberti (Doc. Nos. 215, 216, 217, 218 & 219); Charles S. Moran (Doc. Nos. 220, 221 & 222); Christine Ochoa (Doc. Nos. 223, 224, 225 & 226); Mark Schnallinger (Doc. Nos. 227 & 246); Ingrid Sander (Doc. No. 228); Charles A. Sennewald (plus exhibits) (Doc. Nos. 229, 230 & 231); and Alison H. Swanson (Doc. Nos. 232, 233, 234 & 235). Defendant also filed the Affidavit of Rick Harbin (Doc. No. 243, filed August 1, 1995).

Plaintiffs filed the following depositions or partial deposition transcripts on August 7, 1995: Michael O'Grattan (Doc. No. 255); Roger Nickel (Doc. No. 256); Larry Moore (Doc. No. 257); Darlene Kennedy (Doc. No. 258); Terry Lee Neudecker (Doc. No. 259);

Rhonda Morgan (Doc. No. 260); Toby Williams (Doc. No. 261); Donald L. Weschler (Doc. No. 262); Randy Watts (Doc. No. 263); William E. Sullivan (Doc. No. 264); Philip Smith (Doc. No. 265); John Slivonik (Doc. No. 266); Larry Slimick (Doc. No. 267); Harry Parsell (Doc. Nos. 268 & 269); Robert Anthony Rivera (Doc. No. 270); Perry Duran (Doc. Nos. 271 & 272); Bill Burns (Doc. No. 273); Nicholas Buzzek (Doc. No. 274); Michael Paul Cofield (Doc. No. 275); Rick Harbin (Doc. No. 276); Deposition of Carl Booth (Doc. No. 277); Vincent DelaCruz (Doc. No. 278); Michael Crews (Doc. No. 279); James Edward Hertogs (Doc. No. 280); and Jack E. Enter, Ph.D. (Doc. No. 281).

## BACKGROUND

Plaintiffs at all times relevant to this action were performers employed by the Defendant Walt Disney World Co. ("Disney"). Plaintiffs Liberti, Green, Ochoa, Koth and Harper were dancers for Disney's "Kids of the Kingdom," and Plaintiff Swanson was a character lead. Kids of the Kingdom dancers dress in a penthouse dressing room located in a tower of Cinderella's Castle, and Plaintiff Swanson dresses in a female-only dressing room located in the Fantasy Land tunnel area.

In May of 1991, while investigating the theft of personal property of female employees from the penthouse dressing area, Disney learned that holes had been made in the walls around the dressing area so that someone could see into it while the performers were undressing and using the restroom. Disney told the female members of the Kids of the Kingdom ("female Kids") that the problems would be remedied. However in July of 1991 the female Kids were informed that a Disney employee had been caught "peeping" and had been fired, so they need not worry about any such problems.

By June of 1991, John Giangrossi, a Disney employee who worked as a costumer for the Plaintiffs and others had commenced an elaborate peeping and videotaping scheme through holes in the walls, arrangement of mirrors in the dressing room and use of an unlocked dumbwaiter in the penthouse changing area as well as in the Fantasy Land tunnel dressing area. Giangrossi made videotapes of the Plaintiffs in various stages of undress and while using the restroom. These videotapes were allegedly shown to other Disney employees, including a group viewing at the bachelor party of a Disney employee.

In September of 1991, Rick Harbin, a Disney Entertainment Division manager was informed of Giangrossi's activities and advised security, which visited and inspected the penthouse dressing area. The female Kids were not informed of the peeping and videotaping activities, and the Plaintiffs allege that Disney knowingly allowed Giangrossi to continue his activity unchecked for three more months and failed to limit his access to this area on his days off or to supervise his activities. During that time, Giangrossi continued to work as a costumer, which brought him into continuous interaction, including physical contact, with the Plaintiffs. During that time, to facilitate his illicit activities Giangrossi also installed a horizontal mirror on the wall of the penthouse area and ran an extension cord [1] through the penthouse area to provide electricity to his video camera.

On January 7, 1992, after learning from an employee that Giangrossi intended to peep on the following day, Disney security personnel planned a "sting" operation by installing its own video camera equipment in the hidden area adjacent to the penthouse dressing area used by Giangrossi to observe and videotape the female Kids. None of the female Kids were advised of this operation or asked for their consent. On January 8, 1992, when Disney security checked to see that the camera it intended to use in the sting operation was working properly, Giangrossi was already hidden in his observation post. Rather than immediately apprehend Giangrossi, Disney taped him taping the female Kids. Giangrossi remained in the hidden place masturbating, observing, and videotaping the female Kids for over 1 hour and 15 minutes. The Plaintiffs who were taped on January 8, 1992 had no knowledge of such activities or

---

1. Plaintiffs represent in at least two of their filings with this Court that the extension cord was yellow. While the color of the cord is not of significance at this point in the proceedings, the Court notes that there is no record support for the representation that the cord was yellow. (Doc. No. 220 at 80–83; statement of John Giangrossi; Doc. No. 196 at 61–62.)

of the sting operation at that time and thus did not take any extraordinary measures to protect their privacy.

The video camera used by Giangrossi was owned by Robert Rivera, another Disney employee and costumer who dealt directly with the Plaintiffs. Disney knew from a sworn statement from Rivera that Rivera had loaned the camera to Giangrossi and had viewed some of the tapes made by Giangrossi, yet Disney made no attempt to remove Rivera from his position working closely with the Plaintiffs until the Plaintiffs themselves learned of Rivera's activities and requested that he no longer serve as costumer. He is still employed by Disney.

On April 23, 1992, well after Mr. Giangrossi's arrest and termination, the Plaintiffs who are female Kids discovered additional and new peep holes near their dressing area.

Plaintiffs' 42–count complaint alleges six causes of action as to each Plaintiff, which are divided as follows:

Counts I–VI—Intentional Infliction of Emotional Distress

Counts VII–XII—Invasion of Privacy

Counts XIII–XVIII—Breach of Warranty

Counts XIX [2]–XXIV—Unlawful Interception of Oral Communications

Counts XXV–XXX—Negligent Supervision of Employees

Counts XXXI–XXXVI—Negligent Retention of Employees

Counts XXXVII–XXXXII—Sexual Harassment in Violation of Title VII

This Court previously denied Defendant's motion for judgment on the pleadings as to counts XXV–XXX (negligent retention), XXXI–XXXVI (negligent supervision) and Counts XVIX (sic) through XXIV (unlawful interception of oral communications) (Doc. No. 145, filed May 3, 1995). In this Order, the Court considers the Defendant's motions for summary judgment on Counts I–VI (intentional infliction of emotional distress), VII–XII (invasion of privacy), XXV–XXX (negligent supervision), XXXI–XXXVI (negligent retention), XVIX (sic), XXII, XXIII and XXIV (unlawful interception of oral communications as to certain Plaintiffs) and XXXVI–XXXXII (sexual harassment in viola-

tion of Title VII). The Defendant has filed more than one motion as to certain counts so as to separate its discussion of various legal theories. As a result, Defendant has filed legal memoranda totalling in excess of 60 pages in an apparent attempt to circumvent the page limit established by Local Rule 3.01(b). Defendant is admonished that future filings which exceed twenty pages will be stricken absent leave of court.

Plaintiffs moved for summary judgment on four of the affirmative defenses raised by Disney and have moved to sever their claim for attorney's fees.

## ANALYSIS

### Legal standard

■ Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the Court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

■ On a summary judgment motion the Court may not weigh the credibility of the parties. *See Rollins v. TechSouth Inc.,* 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is

---

**2.** Count XIX (19) was incorrectly denominated in the Amended Complaint as Count XVIX.

true, the case should be presented to the trier of fact. *Id.*

### 1. *Independent Tort Doctrine*

■ Defendant contends that Counts I–VI and VII–XII of the Amended Complaint are barred by Florida's Independent Tort Doctrine because the Plaintiffs also make contract-based warranty allegations based on the same underlying facts. Defendant appears to argue that because Plaintiffs may have a cause of action in contract for the underlying claims, no cause of action in tort should be permitted.

Plaintiffs contend that the Defendant's assertion that the mere presence of a claim for breach of contract excludes a cause of action in tort under the independent tort doctrine is incorrect. Plaintiffs further argue that they are entitled to have the jury conclude whether the Defendant's conduct was more than a mere failure to honor a contractual commitment and whether Defendant's action rose to the level of invasion of privacy. In sum, Plaintiffs argue that they are entitled to recover only if the jury finds that the Defendant's conduct went beyond that which must be proven for the Plaintiffs' breach of warranty claim.

■ Tort damages are not recoverable under Florida law in a breach of contract action absent an accompanying independent tort. *Gregg v. U.S. Industries, Inc.,* 887 F.2d 1462 (11th Cir.1989); *CH2M Hill Southeast, Inc. v. Pinellas County,* 598 So.2d 85, 88 (Fla. 2d DCA 1992), *rev. denied,* 613 So.2d 7 (Fla. 1992), (citing *Lewis v. Guthartz,* 428 So.2d 222 (Fla.1982)); *Serina v. Albertson's, Inc.,* 744 F.Supp. 1113 (M.D.Fla.1990). "Where the acts constituting a breach of contract also amount to a cause of action in tort there may be a recovery of exemplary damages upon proper allegations and proof." *Gregg,* 887 F.2d at 1474 (quoting *Griffith v. Shamrock Village,* 94 So.2d 854, 858 (Fla.1957)). In the instant case, as discussed more fully in part 7 of this Order, the Plaintiffs have properly alleged causes of action for intentional infliction of emotional distress and invasion of privacy such that Defendant's motion for summary judgment (Doc. No. 281) is **DE-NIED.**

### 2. *Defendant's Twenty-first Affirmative Defense*

■ Defendant's Twenty-first Affirmative defense reads "WDW affirmatively alleges and asserts that Plaintiffs' claims arise out of and in the course of their employment with WDW and, therefore, Plaintiffs' claims are limited to the exclusive remedies provided by Chapter 440, Florida Statutes, regarding workers' compensation." Plaintiffs contend that Chapter 440, Florida Statutes, does not provide a remedy for their allegations because they seek compensation only for emotional and psychological difficulties they have experienced as a result of the facts giving rise to this litigation. Florida's workers' compensation statute expressly excludes mental or nervous injuries caused only by stress, fright or excitement from compensation without any otherwise compensable injury. §§ 440.02(1), 440.09(1), *Florida Statutes,* (Supp.1994). The plain language of the statute is supported by recent Florida Supreme Court decisions. *Byrd v. Richardson–Greenshields Securities,* 552 So.2d 1099 (Fla.1989); *University of Florida v. Massie,* 602 So.2d 516 (Fla.1992); *compare, City of Holmes Beach v. Grace,* 598 So.2d 71 (Fla.1992). Therefore, Plaintiffs' motion for summary judgment on the Defendant's twenty-first affirmative defense (Doc. No. 177) is **GRANTED.**

### 3. *Motion to Sever Attorney Fees*

Plaintiffs have moved this Court for permission to waive their right to a jury trial on the issue of an attorney fee award and sever this claim so that if necessary, the issue will be heard and decided by the Court post-verdict. Defendant has not objected to this motion. The Plaintiffs' motion (Doc. No. 180) is hereby **GRANTED.**

### 4. *Defendant's Twenty-fifth and Twenty-sixth Affirmative Defense*

■ In Counts XXXVII through XXXXII of their Amended Complaint, Plaintiffs allege sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* by the Defendant against each of the named Plaintiffs. Plaintiffs contend that the Defendant

willfully subjected each of them to unlawful sexual harassment by failing to stop or to warn the Plaintiffs about the peeping and videotaping activities. Plaintiffs also contend that each of them satisfied all of the procedural prerequisites to filing this action.

The Defendant's Twenty-fifth Affirmative Defense reads "WDW affirmatively alleges and asserts that, with regard to the claims set forth in Counts XXXVII through XXXXII in connection with any alleged acts of Roberto Rivera ("Rivera"), WDW's alleged knowledge of same or WDW's alleged conduct in connection with Rivera, Plaintiffs have failed to exhaust their administrative remedies with respect to such claims."

The Defendant's Twenty-sixth Affirmative Defense reads "WDW affirmatively alleges and asserts that, with regard to the claims set forth in Counts XXXVII through XXXXII in connection with any alleged acts of Roberto Rivera ("Rivera"), WDW's knowledge of same or WDW's alleged conduct in connection with Rivera, Plaintiffs have failed to satisfy the conditions precedent to filing this action."

Plaintiffs contend that they have set forth, either explicitly or through the underlying facts contained in their charges of discrimination, that Roberto Rivera was involved in the alleged misconduct and that the Defendant was aware of Mr. Rivera's activities. Plaintiffs maintain that the allegations of discrimination based on sex raised in the Amended complaint including those allegations as to River's conduct are contained within the scope of the Plaintiffs' EEOC complaints. Plaintiffs Liberti and Ochoa refer to Rivera by name and the other Plaintiffs make reference to the videotaping, viewing of the videotape by other men and the Defendant's alleged failure to take remedial action. However, none of the Plaintiffs refers in her EEOC charge to the allegedly improper touching by Mr. Rivera.

The Defendant does not question that the Plaintiffs generally complied with technical procedural requirements and time limits of the Civil Rights Act. Defendant contends, however, that Plaintiffs' allegations concerning the actions of Roberto Rivera ("Rivera-based claims"), and particularly the improper touching claims, are neither reasonably relat-

ed to the allegations of Plaintiffs' EEOC complaints nor could they have been expected to grow out of an EEOC investigation of those complaints. Furthermore, Defendant maintains that because Plaintiffs had knowledge of the Rivera-based claims months before the EEOC complaints were filed and because Plaintiffs were represented by counsel, they cannot hide behind the liberal interpretation of Title VII's filing requirements afforded to lay claimants.

■ A plaintiff's charge filed with the EEOC need not be identical to the subsequently filed judicial action. *Wu v. Thomas,* 863 F.2d 1543, 1547, *reh. denied,* 871 F.2d 122 (11th Cir.1989); *Ray v. Freeman,* 626 F.2d 439, 442–43 (5th Cir.1980), *cert. denied,* 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 198 (1981). The Eleventh Circuit has stated:

> As long as allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and "no material differences" between them exist, the court will entertain them. As we have noted . . ., "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."
>
> Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review and not appropriate.

*Wu,* 863 F.2d at 1547 (citations omitted).

In the instant case, Plaintiffs knew of Rivera's involvement in the alleged misconduct and the allegedly improper touching before filing their EEOC complaints. It is not unreasonable to conclude that Mr. Rivera's name would have surfaced during an EEOC investigation of the allegedly illicit taping. The Court finds, in particular, that the source of the video camera allegedly used in the covert peeping operation and the identity of the individual(s) to whom the tapes were displayed is reasonably related to the scope of the investigation which could reasonably be expected to grow out of the discrimination charge. However, the allegations of improper touching are of an entirely different na-

ture, although the impropriety of the alleged touching could be perceived as magnified because of Rivera's participation in the peeping activities. The Court finds that the allegations that Mr. Rivera improperly touched all or some of the Plaintiffs while serving as their costumer do not amplify, clarify, or more clearly focus the Plaintiffs' earlier EEO complaints, and they would not be reasonably expected to grow out of the discrimination charge. The Plaintiffs have therefore failed to exhaust their administrative remedies as to this aspect of their claim. The Court finds, however, that all other allegations concerning Mr. Rivera's connection with and knowledge of the videotaping activities are encompassed within the scope of the EEOC complaints of even those Plaintiffs who did not mention Mr. Rivera by name. The Plaintiffs' Motion (Doc. No. 186) is therefore **DENIED** in part and **GRANTED** in part.

### 5. *Economic Loss Rule*

Defendant moves for summary judgment based on the economic loss rule as to Counts I–VI (intentional infliction of emotional distress), Counts VII–XII (invasion of privacy), Counts XXV–XXX (negligent supervision), and XXXI–XXXVI (negligent retention) of the Amended Complaint. Defendant contends that because its duty to provide the Plaintiffs with safe, secure and private dressing rooms arose from the parties' contract-based employer/employee relationship and because the Plaintiffs have not suffered actual physical injury, the Plaintiffs losses are not compensable in tort.

Plaintiffs have moved for summary judgment as to the Defendant's Fifteenth Affirmative Defense, which also cites the economic loss rule. Plaintiffs contend that there is nothing in their employment contracts which suggests either directly or indirectly that they are the purchasers of a product or service provided by the Defendant. Plaintiffs further contend that they are seeking recovery for damages resulting from personal injuries, that they do not seek recovery for damages for purely economic losses, and that their claims are independent tort claims.[3]

The economic loss rule, which has been adopted in a majority of jurisdictions, prohibits tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself. *Casa Clara Condominium Association, Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1246 (Fla.1993) (citation omitted). In *Casa Clara*, the Florida Supreme Court further explained the rule as follows:

> The rule is 'the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others.'

> Economic loss has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property.' It includes 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' In other words, economic losses are 'disappointed economic expectations,' which are protected by contract law, rather than tort law. This is the basic difference between contract law, which protects expectations, and tort law, which is determined by the duty owed to an injured party. For recovery in tort 'there must be a showing of harm above and beyond disappointed expectations. A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects.'

620 So.2d at 1246 (citations omitted).

Even though the Defendant is correct in noting that claims under particular employment contracts may be barred by the economic loss rule, the facts of the instant case do not easily fit the economic loss doctrine mold. *Compare, Greenberg v. Mount Sinai Medical Center of Greater Miami, Inc.*, 629 So.2d 252 (Fla. 3d DCA 1993); *Serina v. Albertson's*, 744 F.Supp. 1113 (M.D.Fla.1990). Just as clearly as the Plaintiffs seek to benefit from the availability of punitive damages in tort, the Defendant

---

**3.** The Court has accepted the latter position. See part 1 of this Order.

seeks to avoid the potential for liability for punitive damages.

The Court, however, declines the Defendant's invitation to stretch the definition of the economic loss rule beyond the scope of current case law. The Defendant's position, in effect, is that because five of the Plaintiffs had employment contracts with the Defendant, the Defendant is not liable for injuries resulting from any negligent or intentional tort arising out of this relationship. The Defendant contends that because the Plaintiffs' contracts have provisions dealing with safety and security of the Plaintiffs' dressing areas, Plaintiffs have an "adequate contract remedy," regardless of whether the employment contracts were actually intended to govern negligent or intentional tortious behavior by the Defendant or its employees. The Court is unwilling to perch alone on such a precarious limb. None of the cases cited by either party or those reviewed independently by this Court supports such a conclusion. *See, e.g., Casa Clara,* 620 So.2d 1244; *Airport Rent–A–Car, Inc. v. Prevost Car, Inc.,* 660 So.2d 628 (Fla.1995); *Pulte Home Corp. v. Osmose Wood Preserving, Inc.,* 60 F.3d 734 (11th Cir.1995); *Florida Power & Light Co. v. Westinghouse Electric Corp.,* 510 So.2d 899 (Fla.1987); *AFM Corporation v. Southern Bell Telephone and Telegraph Company,* 515 So.2d 180 (Fla.1987); *Greenberg v. Mount Sinai Medical Center of Greater Miami, Inc.,* 629 So.2d 252 (Fla. 3d DCA 1993); *Burton v. Linotype Company,* 556 So.2d 1126 (Fla. 3d DCA 1989), *rev. denied,* 564 So.2d 1086 (Fla.1990); *Serina v. Albertson's, Inc.,* 744 F.Supp. 1113 (M.D.Fla. 1990); *Interstate Securities Corporation v. Hayes Corporation,* 920 F.2d 769, *reh. denied,* 929 F.2d 704 (11th Cir.1991); *Kee v. National Reserve Life Insurance Company,* 918 F.2d 1538 (11th Cir.1990); *Interfase Marketing, Inc. v. Pioneer Technologies Group, Inc.,* 774 F.Supp. 1351 (M.D.Fla. 1991).

Defendants also suggest that the Plaintiffs' allegations of harm do not go above and beyond "disappointed expectations" in that they did not receive safe, private, and secure dressing rooms. *See, Casa Clara,* 620 So.2d at 1246. This suggestion is easily defeated by a cursory reading of the amended complaint. The facts alleged by the Plaintiffs

encompass injuries and losses which are the "natural and foreseeable byproduct of Defendant's alleged failure to meet its contractual obligation to provide a secure dressing area" and extend beyond that point.

The Defendant's Motion for Summary Judgment (Doc. No. 188) is **DENIED,** and Plaintiffs' Motion for Summary Judgment as to the Defendant's Fifteenth Affirmative Defense (Doc. No. 247) is **GRANTED.**

### 6. *Partial Summary Judgment as to Title VII*

■ Defendant moves for partial summary judgment as to the portions of Counts XXXVII–XXXXII of the Plaintiffs' Amended Complaint which seek to impose liability upon the Defendant on the basis of John Giangrossi's independent tortious and criminal peeping activities. Defendant strenuously argues that because Mr. Giangrossi had been terminated and arrested before any of the Plaintiffs was aware of his activities, Mr. Giangrossi's conduct could not have contributed to the allegedly hostile work environment.

The Plaintiffs contend that a genuine issue of material fact exists as to whether as early as May of 1991 and as late as April of 1992 the female Kids had a reasonable basis for subjectively perceiving their work environment to be hostile in that they felt unsafe in their dressing area. The effect of the conduct of Mr. Giangrossi and others on this perception is a factual question.

■ A work environment violates the standards of Title VII if the conditions are severe or pervasive enough to create an **objectively** hostile or abusive work environment **and** if the victim **subjectively** perceives the environment to be abusive, such that the offensive conduct alters the conditions of the victim's employment. *Harris v. Forklift Systems, Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). The Supreme Court further stated that whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. *Id.* at ——, 114 S.Ct. at 371. Defendant correctly argues that incidents not known to an individual until after, for exam-

ple, the individual's date of termination, could not have contributed to the individual's subjective view of a hostile environment. *Edwards v. Wallace Community College,* 49 F.3d 1517, 1522 (11th Cir.1995); *Campbell v. Board of Regents of the State of Kansas,* 770 F.Supp. 1479 (D.Kan.1991); *Perkins v. General Motors Corporation,* 129 F.R.D. 655, 669 (W.D.Mo.1990), *aff'd,* 965 F.2d 597 (8th Cir. 1992). These cases are factually distinguishable. The record in the instant case reflects that the Plaintiffs were not aware of Mr. Giangrossi's identity and the exact nature and extent of his activities until after he was apprehended. However, because of the peculiar facts of this case, it would not be accurate to conclude that Mr. Giaangrossi's activities "could not have contributed" to the Plaintiffs' subjective view of a hostile environment. *Edwards,* 49 F.3d at 1522. There is record evidence that the parties were aware of holes possibly used for peeping purposes in the castle penthouse dressing area as early as May of 1991. (Doc. No. 263, at 127–135). Additional and new holes were discovered after Mr. Giangrossi's arrest and termination, and the Plaintiffs continued to be concerned about the security of their dressing areas after January of 1992. (Doc. No. 18, Exh. B; Doc. No. 218 at 510–511, 519; Doc. No. 233 at 175–180; Doc. No. 208 at 354–61). Plaintiffs' after-the-fact knowledge of Mr. Giangrossi's behavior and their dissatisfaction with their employer's reaction could have served as a basis for their feeling that a hostile work environment existed, particularly since Mr. Giangrossi was clearly not the only individual engaging in such activities.

The extent of Plaintiffs' knowledge of Giangrossi's activities and how this knowledge affected their perception of their working environments at different times is a question of fact. The Court is unwilling to find at this juncture that Mr. Giangrossi's alleged conduct had no impact on either an objective or subjective interpretation of a hostile work environment, notwithstanding the Plaintiffs' lack of knowledge at the time of Mr. Giangrossi's peeping. Defendant's Motion for Summary Judgment (Doc. No. 191) is **DENIED.**

### 7. *Legal Sufficiency of Plaintiffs' Intentional Infliction of Emotional Distress and Invasion of Privacy Claims*

Defendant has moved for summary judgment as to Counts I–VI and Counts VII–XII of the Amended Complaint, contending that the facts of this case show that the Defendant's conduct does not rise to the level of either intentional infliction of emotional distress or invasion of privacy under Florida law. Defendant further contends that even if the Court does not so find, the Defendant is excused from any liability for intentional infliction of emotional distress as it was exercising its legal right to investigate the peeping activity. Finally Defendant contends that it escapes liability under the doctrine of respondeat superior.

Under Florida law, liability for intentional infliction of emotional distress will lie only where the conduct in question has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Metropolitan Life Insurance Company v. McCarson,* 467 So.2d 277, 278–79 (Fla.1985) (quoting Section 46, Restatement (Second) of Torts (1965)). The issue of whether the Defendant's conduct rises to the level of being extreme and outrageous so as to permit a claim for intentional infliction of emotional distress is a legal question. *See, e.g., Baker v. Florida National Bank,* 559 So.2d 284, 287 (Fla. 4th DCA), *rev. denied,* 570 So.2d 1303 (Fla.1990); *Stockett v. Tolin,* 791 F.Supp. 1536, 1555 (S.D.Fla.1992). In order to recover damages for intentional infliction of emotional distress, the Plaintiffs must prove:

(a) deliberate or reckless infliction of mental suffering; (b) outrageous conduct; (c) the conduct must have caused the emotional distress; and (d) the distress must have been severe. *Williams v. City of Minneola,* 575 So.2d 683, 691 (Fla. 5th DCA), *rev. denied,* 589 So.2d 289 (1991); *Watson v. Bally Manufacturing Corp.,* 844 F.Supp. 1533, 1536 (S.D.Fla.1993). Courts applying Florida law have narrowly construed this cause of action. *Golden v. Complete Holdings, Inc.,* 818 F.Supp. 1495, 1499 (M.D.Fla.1993); *Vance v.*

*Southern Bell Telephone & Telegraph Co.,* 983 F.2d 1573 (11th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995). Few cases have upheld a plaintiff's pursuit of this cause of action under Florida law. *Stockett v. Tolin,* 791 F.Supp. 1536 (S.D.Fla.1992) (persistent sexual harassment, including physical advances, by employer/business owner which occurred over a 16 month period); *Williams v. City of Minneola,* 575 So.2d 683 (Fla. 5th DCA), *rev. denied,* 589 So.2d 289 (Fla.1991) (reckless conduct in connection with pictures of a dead body); *Dependable Life Insurance Company v. Harris,* 510 So.2d 985 (Fla. 5th DCA 1987) (disability insurer wrongfully withheld insurance payments and made vicious allegations and threats to policyholder known to be ill and in weak pecuniary circumstances); *Lashley v. Bowman,* 561 So.2d 406 (Fla. 5th DCA 1990) (restaurant owner threatened to and subsequently called police when patron refused to pay for allegedly undercooked seafood—conduct "smack[ed] of extortion").

 Plaintiff argues that if the question of whether the conduct is outrageous depends on disputed issues of fact, summary judgment should not be granted. *Lashley v. Bowman,* 561 So.2d 406 (Fla. 5th DCA 1990). Defendants do not contend, at this juncture, that the Plaintiffs did not suffer from severe emotional distress. Taking the facts in the light most favorable to the Plaintiffs, a jury could find that the Plaintiffs were subjected to emotional distress in violation of the law. The alleged conduct of Defendant and its representatives throughout and after the investigation, including the use of the female Kids as "bait" to catch the peeper, in hindsight does not appear to have been the most prudent or effective method of dealing with the privacy problems in Cinderella's Castle. The question of whether the Defendant's conduct in this case "rise[s] to the level of extremity or outrageousness required to sustain [a] claim for intentional infliction of emotional distress" is a question for the jury and therefore inappropriate for summary judgment. *Vance,* 983 F.2d at 1575 n. 7.

Next the Court considers the Defendant's motion as applied to Plaintiffs' cause of action for invasion of privacy. The Defendant has incorrectly stated that "the standard for measuring the outrageousness of the alleged conduct in an invasion of privacy claim is **the same as** that for the tort of intentional infliction of emotional distress." (Doc. No. 237 at 13, citing *Stoddard v. Wohlfahrt,* 573 So.2d 1060, 1062 (Fla. 5th DCA), *cause dismissed,* 581 So.2d 1310 (Fla.1991)). In fact, the two standards only "share certain similarities." *Stoddard,* 573 So.2d at 1062. The Defendant relies on the same arguments it raised as to the intentional infliction of emotional distress claim in its attempt to defeat the invasion of privacy claim. Therefore, the Court finds that on the record before it the Defendant has failed to prove that it is entitled to judgment as a matter of law on the Plaintiffs' claims for invasion of privacy.

### Legal Right to Investigate

 The Defendant contends that it is shielded from liability because it pursued its legal rights to investigate the alleged peeping activity in a permissible way. The Restatement (Second) of Torts, Section 46, Comment (g) provides that:

> conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a **permissible way,** even though he is well aware that such insistence is certain to cause emotional distress.

(emphasis added). The parties discuss four Florida cases on this issue in their respective memoranda.

In *State Farm Mutual Automobile Insurance Co. v. Novotny,* 657 So.2d 1210, 1212–14 (Fla. 5th DCA 1995) the employer, State Farm, was pursuing an investigation into employee conduct by interviewing employees off-premises. The employer had stated a rational, objective purpose for holding interviews away from the office and the court did not find the particular interview method utilized to be so egregious as to constitute outrageousness. Therefore the court found that the employer was relieved from liability because it was "merely pursuing an investigation it had a legal right to pursue, in a legally permissible way." *Id.*

In *Metropolitan Life v. McCarson,* 467 So.2d 277, 278–79 (Fla.1985) an insured lost nursing benefits after failing to respond to

insurer's request for proof that she was ineligible for Medicare. The insured was placed in a nursing home and died shortly thereafter, presumably due to the stress involved in the change in her surroundings. The Florida Supreme Court found that the insurer did no more than assert its legal rights to demand proof of ineligibility for Medicare in a legally permissible way and was therefore not liable. *Id.* at 279. The right to demand proof of ineligibility for Medicare was afforded the insurance company under the terms of the policy. *Id.*

In *Southland Corporation v. Bartsch,* 522 So.2d 1053, 1056 (Fla. 5th DCA), *rev. dismissed,* 531 So.2d 167 (Fla.1988) a convenience store called the police to have a 6 year old shoplifter arrested, an act the court found to be "clearly within [the store's] legal rights." Furthermore, "the rights were asserted in a permissible way." *Id.*

Finally, the Fifth District Court of Appeal of Florida in *Food Lion, Inc. v. Clifford,* 629 So.2d 201 (Fla. 5th DCA 1993), *rev. dismissed,* 632 So.2d 1025 (Fla.1994) analogized the situation before it concerning an employer's investigation of employee theft to the facts of *Bartsch.* The court found that the employer had not exceeded the bounds of propriety in its theft investigation. *Id.* at 203.

In the instant case, the parties agree that it was certainly permissible, if not obligatory, for the Defendant to conduct an investigation of the peeping allegations. However, this court is not prepared to rule on the record before it that the Defendant did not exceed the bounds of propriety in using the female Kids as "bait" in the sting operation without their prior knowledge or consent, particularly in consideration of the contractual agreement between several of the Plaintiffs and the Defendant regarding a secure dressing environment. Defendant has not established that the use of the female Kids as bait to catch the peeping tom was a "permissible way" of pursuing its legal rights of investigation. Its motion on this ground must be denied.

### Respondeat Superior

█ Finally Defendant seeks to avoid liability based on the doctrine of respondeat superior because neither Giangrossi nor Riv-

era was acting within the course and scope of his employment at the time of the alleged activities. The Defendant correctly states the general rule that sexual assaults by employees are outside the scope of an employee's employment and are insufficient to impose vicarious liability on the employer. *Nazareth v. Herndon Ambulance Service, Inc.,* 467 So.2d 1076, 1078 (Fla. 5th DCA), *rev. denied,* 478 So.2d 53 (Fla.1985); *City of Green Cove Springs v. Donaldson,* 348 F.2d 197 (5th Cir.1965). The instant case, however, does not deal with a sexual assault.

█ Plaintiff contends that the Defendant is liable for torts giving rise to a sexually hostile environment committed by its employees. *Urquiola v. Linen Supermarket, Inc.,* 1995 WL 266582 (M.D.Fla.1995) (unpublished). To prove respondeat superior liability in a sexual harassment case the Plaintiffs must show: (1) membership in a protected class; (2) subjection to unwanted sexual harassment (3) because of their sex; (4) the harassment affected the terms, conditions, or privileges of employment; and (5) that the employer knew, or should have known, of the harassment and failed to take prompt action to remedy the violation. *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904 (11th Cir.1988) (citation omitted). Furthermore, the EEOC Guidelines on Discrimination Because of Sex state that:

> [w]ith respect to conduct between fellow employees, an employer is responsible for the acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show it took immediate and appropriate corrective action.

Title 29 C.F.R. § 1604.11(d) (1994).

█ Based on the record before the Court, it is clear that the Defendant knew of the alleged peeping activities of Mr. Giangrossi as early as three months before his apprehension. (Doc. No. 237 at 5–7). Whether the actions taken by the Defendant in response to the allegations of peeping were "prompt," or "immediate and appropriate corrective action" is an issue within the province of the jury. A jury could find that the Defendant's actions crossed the bounds

of decency and could lead the average member of the community to exclaim "outrageous!" *See Urquiola,* 1995 WL 266582 *4 (citing *Stockett v. Tolin,* 791 F.Supp. 1536 (S.D.Fla.1992)).

Based on the foregoing, the Defendant's motion for summary judgment (Doc. No. 236) is **DENIED** in its entirety.

### 8. *Unlawful Interception of Oral Communications*

 Defendant moves for summary judgment as to Counts XVIX [sic], XII, XXIII and XXIV of Plaintiffs' Amended Complaint. In these counts, Plaintiffs Liberti, Koth, Harper and Swanson allege that the Defendant violated Chapter 934, *Florida Statutes,* regarding unlawful interception of oral communications, in that John Giangrossi intercepted their oral communications with the Defendant's full knowledge and consent.[4] Defendant contends that Mr. Giangrossi could not have intercepted the oral communications of these Plaintiffs with its full knowledge and consent at any time after September 26, 1991, when management was first informed of these activities.

Plaintiff contends that the record reflects substantial uncertainty about when Giangrossi's taping activities occurred and on how many occasions. However, the deposition excerpts and statements relied on by Plaintiffs do not provide sufficient support for Plaintiffs' position to defeat the motion for summary judgment. At best, Plaintiffs suggest only that an inference can be drawn that Mr. Giangrossi may have attempted to videotape the female Kids between September of 1991 and January of 1992 when he was apprehended which may or may not have captured the oral communications of Plaintiffs Liberti, Koth, Harper and Swanson. The deposition testimony of Mr. Giangrossi does not suggest that any attempts to videotape the Plaintiffs during that time period were successful. (Doc. No. 196 at 61–65; 74–75; Doc. No. 198 at 449–450; Doc. No. 199 at 489–499; Doc. No. 200 at 617–618). The Defendant's Motion for Summary Judgment on Counts XVIX [sic], XXII, XXIII and

XXIV (Doc. No. 239) is therefore **GRANTED.**

### 9. *Defendant's Fifteenth Affirmative Defense*

As discussed in part 5 of this Order, Plaintiff's Motion for Summary Judgment as to Defendant's Fifteenth Affirmative Defense (Doc. No. 247) is **GRANTED.**

### CONCLUSION

Based on the foregoing, the Court rules as follows:

1. Defendant's Motion for Summary Judgment on Counts I–VI and VII–XI (Doc. No. 168) is **DENIED.**

2. Plaintiffs' Motion for Summary Judgment as to Walt Disney World's Twenty-first Affirmative Defense (Doc. No. 177) is **GRANTED.**

3. Plaintiffs' Motion to Sever Claim for Attorney's Fees (Doc. No. 180) is **GRANTED.**

4. Plaintiffs' Motion for Summary Judgment as to Defendant's Twenty-fifth and Twenty-sixth Affirmative Defenses (Doc. No. 186) is **GRANTED** as to claims concerning Mr. Rivera's involvement in the videotaping activities and **DENIED** as to the allegations that Mr. Rivera inappropriately touched one or more of the Plaintiffs.

5. Defendant's Motion for Summary Judgment as to Counts I–VI, VII–XII, XXV–XXX, and XXXI–XXXVI (Doc. No. 188) is **DENIED.**

6. Defendant's Motion for Partial Summary Judgment as to Counts XXXVII–XXXXII (Doc. No. 191) is **DENIED.**

7. Defendant's Motion for Summary Judgment as to Counts I–VI and VII–XII (Doc. No. 236) is **DENIED.**

8. Defendant's Motion for Summary Judgment as to Counts XVIX (sic), XXII, XXIII and XXIV (Doc. No. 239) is **GRANTED.**

---

4. Defendant's motion is limited to four of the named Plaintiffs. It apparently does not contest at this juncture that the voices of Plaintiffs Green

and Ochoa were captured on Giangrossi's January 8, 1992 videotape.

9. Plaintiffs' Motion for Summary Judgment as to Defendant's Fifteenth Affirmative Defense (Doc. No. 247) is **GRANTED**.

**DONE AND ORDERED.**